**Richard Herman FORD, Petitioner–Appellant,**

**v.**

**S. HUBBARD, Warden; Daniel E. Lungren, Attorney General, Respondents–Appellees.**

**Richard Herman Ford, Petitioner–Appellant,**

**v.**

**S. Hubbard, Warden; Attorney General of the State of California, Respondents–Appellees.**

**Richard Herman Ford, Petitioner,**

**v.**

**United States District Court for the Central District of California, Respondent,**

**S. Hubbard, Warden, Real Party in Interest.**

Richard Herman Ford, Petitioner,

v.

S. Hubbard, Warden, Respondent.

Richard Herman Ford, Petitioner,

v.

United States District Court for the
Central District of California,
Respondent,

S. Hubbard, Warden, Real
Party in Interest.

Nos. 98–56455, 98–56587, 98–80477,
98–80582, 98–80603.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Submission vacated June 10, 2002.

Re-submitted July 24, 2002.

Filed Sept. 6, 2002.

Amended May 15, 2003.

Lisa M. Bassis, Los Angeles, CA, for the petitioner-appellant.

Bill Lockyer, Attorney General for the State of California; David P. Druliner, Chief Assistant Attorney General; Carol Wendelin Pollack, Senior Assistant Attorney General; Steven D. Matthews, Supervising Deputy Attorney General; and Paul M. Roadarmel, Jr., Deputy Attorney General, Los Angeles, CA, for the respondents-appellees.

Before PREGERSON, REINHARDT and SILVERMAN, Circuit Judges.

Opinion by Judge REINHARDT.
Dissent by Judge SILVERMAN.

### ORDER

The majority opinion filed September 6, 2002, and appearing at 305 F.3d 875 (9th Cir.2002), is hereby amended as follows:

1.  slip op. at 13347, line 18 [305 F.3d at 878]: after *"See"* and before the citation to *James v. Pliler,* insert *"Kelly v. Small,* 315 F.3d 1063, 1070–71 (9th Cir.2003);"

2.  slip op. at 13347, line 18 [305 F.3d at 878]: after the above new citation to *Kelly v. Small,* insert the following footnote:"As our dissenting colleague is well aware, in the course of confronting similar issues, the *Kelly* panel and this panel arrived at the same conclusions at approximately the same time, and filed their respective opinions within days of each other. Because we are part of a larger collegial body, and because it is our general practice to try to make our opinions as consistent as possible, both panels decided to make several harmonizing modifications to their originally filed opinions. Each panel amended its opinion to refer to the other, in part to make the coordination of our dispositions clear. We are, accordingly, puzzled that the dissent should find our action 'bizarre.'"

3.  slip op. at 13347, line 28 [305 F.3d at 878]: after "(unless he could show that he was entitled to equitable tolling)," insert *"See Valerio v. Crawford,* 306 F.3d 742, 770–71 (9th Cir. 2002) (en banc), *cert. denied,* —— U.S. ——, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003)."

4.  slip op. at 13348, line 23 [305 F.3d at 878]: after the citation to *Anthony v. Cambra,* insert ", *cert. denied,* 533 U.S. 941, 121 S.Ct. 2576, 150 L.Ed.2d 739 (2001)."

5.  slip op. at 13348, line 26 [305 F.3d at 878]: after the citation to *Zarvela v. Artuz,* insert ", *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415."

6.  slip op. at 13350, lines 10–11 [305 F.3d at 879]: replace "Ford did not do so. As a result, on September 10, 1997" with "On July 28, 1997, Ford instead opted to have the petition dismissed in order to exhaust his unexhausted claims. As a result, on August 5, 1997"

7.  slip op. at 13353, n. 4, line 5 [305 F.3d at 881]: replace *"Miranda & Wong Sun"* with *"Miranda* and *Wong Sun"*

8.  slip op. at 13355, lines 14–15 [305 F.3d at 882]: replace *"Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (June 17, 2002) (No. 01–301)." with *"Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)."

9.  slip op. at 13356, line 10 [305 F.3d at 883]: after the citation to *James v. Giles* and before *"see also Freeman v. Page,"* insert "As we recently said in *Kelly v. Small,* 'The exercise of discretion to stay the federal proceeding is particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA].' *Kelly,* 315 F.3d at 1070;"

10. slip op. at 13356, line 13 [305 F.3d at 883]: after the citation to *Freeman v. Page,* insert ", *cert. denied,* 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277"

11. slip op. at 13357, n. 6, lines 8–9 [305 F.3d at 884]: replace *"Wyatt v. Terhune,* 280 F.3d 1238, 1245–46 (9th Cir.2001)" with *"Wyatt v. Ter-*

*hune,* 315 F.3d 1108, 1118–19 (9th Cir.2003)"

12. slip op. at 13358, line 20 [305 F.3d at 884]: after "(quoting *Freeman,* 208 F.3d at 577)" and before "Thus, the district court, by failing to inform . . .", insert "; *see also Kelly,* 315 F.3d at 1070 (finding that the decision 'to stay the federal proceeding is particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA].')."

13. slip op. at 13358, line 36 [305 F.3d at 884]: after "a denial of the request would likely constitute error," replace "*See Zarvela*" with "As the First Circuit recently recognized, '[T]here is a growing consensus that a stay is required when dismissal could jeopardize the petitioner's ability to obtain federal review.' *Nowaczyk v. Warden, N.H. State Prison,* 299 F.3d 69, 79 (1st Cir.2002); *see also Zarvela*"

14. slip op. at 13359, lines 2–3 [305 F.3d at 884]: replace "*see also James,* 269 F.3d at 1126" with "*James,* 269 F.3d at 1126"

15. slip op. at 13360, lines 30–31 [305 F.3d at 885]: replace "What the district court should have told Ford," with "Other circuits have also noted the deceptive nature of a dismissal without prejudice when the claims dismissed are time-barred; in *Rodriguez v. Bennett,* 303 F.3d 435 (2d Cir.2002), for example, the Second Circuit explained that for a petitioner dismissed 'without prejudice' after a year in federal habeas proceedings, 'the 'without prejudice' provision was an illusion; petitioner could never succeed in timely refiling the petition because he would already

be time-barred.' *Rodriguez,* 303 F.3d at 439.[¶] We have recognized a district court's obligation to avoid misleading petitioners. In *Valerio v. Crawford,* 306 F.3d 742 (2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003), the en banc court instructed the district court to inform a petitioner when claims to be dismissed 'without prejudice' would actually be time-barred. *See Valerio,* 306 F.3d at 770–71. This simple step helps avoid the unnecessary forfeiture of petitioners' constitutional rights. Here, what the district court should have told Ford."

16. slip op. at 13361, line 7 [305 F.3d at 886]: after "choice between the two options. *See,* "and before the citation to *James,* insert" *Valerio,* 306 F.3d at 770–71 (finding that the district court must inform the petitioner of a potential time-bar before the petitioner chooses whether to amend his mixed petition, in order to make that choice meaningful);"

17. slip op. at 13361, n. 7, line 14 [305 F.3d at 886]: after "absent equitable tolling," and before "To do otherwise," insert "*See Valerio,* 306 F.3d at 770–71."

18. slip op. at 13363, line 30 [305 F.3d at 887]: after the citation to *Van Tran v. Lindsey,* insert ", *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274, *overruled on other grounds by Lockyer v. Andrade,* —— U.S. ——, ——, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)."

19. slip op. at 13364, n. 10 [305 F.3d at 888]: replace n. 10 with "*Compare Anthony,* 236 F.3d at 574 (holding that the district court's outright dismissal of Anthony's

mixed petition without having adequately informed him of his options was 'improper') *and* discussion *supra* Sections II.A. & II.B. (explaining why Ford's initial habeas petitions were improperly dismissed) *with Anthony,* 236 F.3d at 574 n. 1 (stating that the dismissal of the mixed habeas petitions in *Green, Van Tran,* and *Henry* were 'proper')."

20. slip op. at 13364, n. 11, lines 1–3 [305 F.3d at 888]: replace *"See Jorss,* 266 F.3d at 957 n. 1 (emphasizing that the petitioner in *Green* 'accepted' the proper dismissal of his mixed petition). Similarly, the petitioners in *Van Tran* and *Henry* " with "The petitioners in Green, Van Tran and *Henry* "

21. slip op. at 13366–67, n. 14, lines 11–14 [305 F.3d at 889]: replace "; *Jorss v. Gomez,* 266 F.3d 955, 957–58 (9th Cir.2001) (holding that the district court's erroneous dismissal of Jorss's timely-filed habeas petition as unexhausted constitutes an extraordinary circumstance that equitably tolled AEDPA's statute of limitations)." with". The Fifth Circuit recently found similar circumstances appropriate for equitable tolling in the context of a prisoner's § 1983 suit dismissed ostensibly without prejudice for failure to exhaust administrative remedies. In *Clifford v. Gibbs,* 298 F.3d 328 (5th Cir.2002), the court recognized the impropriety of a dismissal without prejudice that actually left claims 'forever precluded.' *Id.* at 333. It held that claims should be equitably tolled when the 'district court's dismissal ... without prejudice actually operates as a dismissal with prejudice because [the petitioner] is barred from re-

turning to federal court after exhausting his remedies because limitations has already run.' *Id.* Ford faced the same constraints."

22. slip op. at 13369, line 3 [305 F.3d at 890]: after the citation to *Miranda v. Castro,* insert ", *cert. denied,* —— U.S. ——, 123 S.Ct. 496, 154 L.Ed.2d 399"

23. slip op. at 13369, n. 18, line 4 [305 F.3d at 891]: after the citation to *Frye v. Hickman,* insert ", *cert. denied,* 535 U.S. 1055, 122 S.Ct. 1913, 152 L.Ed.2d 823 (2002)"

24. slip op. at 13369, n. 18, line 6 [305 F.3d at 891]: after the citation to *Kreutzer v. Bowersox,* insert ", *cert. denied,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001)"

25. slip op. at 13369, n. 18, line 9 [305 F.3d at 891]: after the citation to *United States v. Saro,* insert ", *cert. denied,* 534 U.S. 1149, 122 S.Ct. 1111, 151 L.Ed.2d 1005 (2002)"

26. slip op. at 13369, line 7 [305 F.3d at 890–91]: replace *"Calderon v. United States District Court (Beeler)* " with *"Calderon v. U.S. Dist. Court (Beeler)* " and after the *Beeler* parenthetical, at line 11, insert ", *overruled on other grounds by Calderon v. U.S. Dist. Court (Kelly),* 163 F.3d 530, 540–41 (9th Cir.1998) (en banc)."

27. slip op. at 13369, n. 19, line 3 [305 F.3d at 891]: after the citation to *Fahy v. Horn,* insert ", *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241"

28. slip op. at 13374, lines 17–18 [305 F.3d at 893]: replace "nor does any other case" with "nor does any other case involving a routine mixed petition."

29. slip op. at 13375, line 20 [305 F.3d at 894]: after "This is a far cry

from what the majority holds today," insert the following two new paragraphs:

The majority's reliance on *Valerio v. Crawford*, 306 F.3d 742 (9th Cir.2002) (en banc) is likewise misplaced. *Valerio* involved highly unusual procedural circumstances of nearly Talmudic complexity, circumstances too convoluted to recount here. But in a nutshell, this court itself created a mixed petition for the petitioner by reinstating, on appeal, new unexhausted claims that had been dismissed by the district court for abuse of the writ. In a portion of the opinion entitled, "Procedure on Remand," the court sought to bring some order to the chaos by giving the district court detailed instructions on how to proceed from that point on, including the direction to inform Valerio of a possible time-bar in the event that the district court were to decline to follow the stay-and-abeyance procedure on remand. In no way, shape or form can *Valerio* be read to require *Miranda*-like warnings about the statute of limitations in the garden variety mixed-petition case.

The majority's reliance on *Kelly v. Small*, 315 F.3d 1063 (9th Cir.2003), is simply bizarre. The amended *Kelly* opinion was filed after the original opinion in this case (*Ford*) and relies on the original *Ford* opinion for support. *Id.* at 1070–71. Now, in *its* amended opinion, the majority in *this* case (*Ford*) relies on *Kelly*, which in turn relies on *Ford.* The wacky circularity of all of this does not change the fact that it was the *Ford* majority in *this* case that originally cooked up the rule on which the *Kelly* court relied, and with which I respectfully disagree for the reasons I've given.

30. slip op. at 13376, line 10 [305 F.3d at 894]: replace "Ford did not raise this equitable tolling issue in" with "Ford did not raise equitable tolling in"

31. slip op. at 13376, lines 11–12 [305 F.3d at 894]: replace "this appeal—not even" with "this appeal, not even"

With these amendments, the panel has voted to deny the petition for panel rehearing and the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration. Fed. R.App. P. 35.

The petition for rehearing and the suggestion for rehearing en banc are DENIED.

## OPINION

REINHARDT, Circuit Judge.

Richard Herman Ford, a California prisoner, appeals the district court's dismissal of his two habeas corpus petitions as time-barred under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). Both federal habeas petitions were initially timely filed in the district court by Ford proceeding *pro se;* however, both were "mixed" petitions containing exhausted as well as unexhausted claims. Along with the mixed petitions, Ford filed motions to stay each of them while he exhausted the then-unexhausted claims in state court. The district court gave him the option with respect to both petitions of either dismissing the unexhausted claims and proceeding only with the exhausted claims or dismissing the petitions without prejudice and re-filing after exhaustion of the unexhausted claims. The district court did not, however, inform Ford that it would not have the power to consider his motions to stay the petitions unless he opted to amend them and dis-

miss the then-unexhausted claims. *See Kelly v. Small*, 315 F.3d 1063, 1070–71 (9th Cir.2003);[1]

*James v. Pliler*, 269 F.3d 1124, 1126–27 (9th Cir.2001); *Calderon v. District Court (Taylor)*, 134 F.3d 981, 989 (9th Cir.1998). Although the magistrate's orders stated and the district court's orders reiterated that the dismissals were *without prejudice*, the district court also did not inform Ford that the AEDPA one-year statute of limitations had expired during the pendency of his federal habeas petitions so that, if he chose to dismiss his federal petitions and returned to state court to exhaust all of his claims, he would be time-barred when he attempted to re-file his federal claims (unless he could show that he was entitled to equitable tolling) *See Valerio v. Crawford*, 306 F.3d 742, 770–71 (9th Cir.2002) (en banc), *cert. denied*, —— U.S. ——, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003).

Ford, still proceeding *pro se*, opted to have both petitions dismissed without prejudice and returned to state court to exhaust his remaining claims. When he re-filed his claims in federal court after exhausting all of them, however, the district court dismissed his petitions as time-barred.

We conclude that the district court erred by failing to inform Ford (1) that it could consider his stay motions only if he opted to amend the petitions and dismiss the then-unexhausted claims, and (2) that his federal claims would be time-barred, absent cause for equitable tolling, upon his return to federal court if he opted to dismiss the petitions "without prejudice" and

return to state court to exhaust all of his claims. Because Ford's decision to have his timely-filed federal habeas petitions dismissed without prejudice was an uninformed one, we conclude that the district court's dismissal of his initial federal habeas petitions without prejudice constituted prejudicial error.

We next address the district court's dismissal of Ford's second federal habeas petitions as time-barred, hold that the claims that were included in his initial petitions and then re-asserted in his second petitions are not time-barred under AEDPA, and remand them for consideration on the merits. Specifically, we apply Federal Rule of Civil Procedure 15(c) to Ford's second petitions and hold that the second petitions relate back to and preserve the filing date of the initial petitions. *See Anthony v. Cambra*, 236 F.3d 568, 575–77 (9th Cir.2000), *cert. denied*, 533 U.S. 941, 121 S.Ct. 2576, 150 L.Ed.2d 739 (2001). In so doing, we follow the approach taken by the Second Circuit in *Zarvela v. Artuz*, 254 F.3d 374, 382–83 (2d Cir.2001), *cert. denied*, 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415.

With respect to the claims that were raised for the first time in Ford's second habeas petitions, we affirm the district court's dismissal of the two claims in the "Loguercio" case (No. CV 98–2557), but we vacate the dismissal of the five claims in the "Weed" case (No. CV 98–2556). We remand the additional Weed claims for an evidentiary hearing on equitable tolling. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc).

---

1. As our dissenting colleague is well aware, in the course of confronting similar issues, the *Kelly* panel and this panel arrived at the same conclusions at approximately the same time, and filed their respective opinions within days of each other. Because we are part of a larger collegial body, and because it is our general practice to try to make our opinions as consistent as possible, both panels decided to make several harmonizing modifications to their originally filed opinions. Each panel amended its opinion to refer to the other, in part to make the coordination of our dispositions clear. We are, accordingly, puzzled that the dissent should find our action 'bizarre.'

## I. Procedural Background

### A. The Loguercio Case

On January 6, 1988, Richard Ford and Robert Anthony Von Villas, both former Los Angeles police officers, were convicted of conspiring to murder John Loguercio and attempting to murder his wife in violation of California Penal Code §§ 182, 187, 664, and robbery, conspiracy to commit robbery, and assault with a firearm in violation of California Penal Code §§ 182, 211, 245(a)(2). Ford was also convicted of attempting to administer an intoxicating agent in violation of California Penal Code §§ 222, 664. On March 11, 1988, he was sentenced to thirty-six years to life in prison.

Ford appealed the judgment and, on October 9, 1992, the California Court of Appeal affirmed his conviction. He appealed to the California Supreme Court, but his petition for review was denied on January 14, 1993. He then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on June 14, 1993. *See Ford v. California*, 508 U.S. 975, 113 S.Ct. 2970, 125 L.Ed.2d 669 (1993).

On April 19, 1997, Ford signed and delivered to the prison authorities a *pro se* federal habeas corpus petition. His petition was forwarded to the clerk and filed in the United States District Court for the Central District of California on May 5, 1997.[2] Ford also filed a motion to stay the federal habeas corpus petition containing exhausted grounds while he exhausted the then-unexhausted state claims. The magistrate judge, realizing that some of Ford's claims had not been exhausted, issued an order giving him the choice of either (1) dismissing the petition without prejudice and re-filing after exhaustion of the unexhausted claims or (2) dismissing the unexhausted claims and proceeding with only the exhausted claims. Under the magistrate's order, if Ford wanted to waive the unexhausted claims and proceed only on the exhausted claims, he was to so notify the court. On July 28, 1997, Ford instead opted to have the petition dismissed in order to exhaust his unexhausted claims. As a result, on August 5, 1997 the magistrate judge issued his report recommending that the district court dismiss the habeas petition without prejudice because it was a partially-exhausted petition under *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In his report and recommendations, the magistrate judge stated that the court did not have

**2.** In his initial federal petition, Ford claimed that he was entitled to relief on the following grounds: (1) trial court violated his confrontation clause rights when it quashed subpoena duces tecum issued by defense concerning freelance writer who had 10 hours of a taped interview with the chief prosecution witness about the case; (2) the defense was unconstitutionally burdened when the court excluded evidence of the writer's pecuniary interest as irrelevant; (3) trial court erred in not allowing evidence of prosecutorial misconduct on the basis of instructions to the police to cease interviewing witnesses; (4) trial court erred in not allowing the defense to present extrinsic evidence of third-party culpability; (5) trial court's refusal to allow evidence about the petitioner's wife's rape, tape recordings of the prosecution's key witness, and references to the co-defendant hampered the defense; (6) failure to allow evidence of specific acts of misconduct in order to impeach prosecution's prime witness was error; (7) jury misconduct resulting from the jury foreman producing his own "spread sheet," which was then used by the entire jury; (8) failure to suppress a general warrant lacking in specificity and particularity violated petitioner's rights under the Fourth & Fourteenth Amendments; (9) due process rights were denied by State's failure to preserve potentially favorable evidence; (10) trial court prejudicially refused to instruct the jury about the inferences to be drawn against People for loss of evidence seized pursuant to warrant; and (11) trial court erroneously refused to instruct that the jury that it had to be unanimous on each overt act of each conspiracy.

the discretion to grant Ford's motion for a stay because the court could not stay a mixed petition. On September 11, 1997, the district court adopted the magistrate's report and dismissed Ford's petition, purportedly without prejudice.

On September 29, 1997, Ford filed a state habeas corpus petition in the California Supreme Court. His petition was summarily denied on March 25, 1998. Ford then returned to federal court on April 7, 1998 and filed a second *pro se* federal habeas corpus petition in the district court.[3] On April 29, 1998, the state filed an answer and, on June 5, 1998, the state filed a motion to dismiss Ford's petition as untimely under AEDPA's one-year statute of limitations. On June 17, 1998, Ford filed an opposition to the motion. On June 26, 1998, the magistrate issued a report recommending that Ford's petition be dismissed with prejudice as untimely. Ford filed an objection to the report on July 16, 1998. On July 22, 1998, the district judge adopted the magistrate's report and dismissed the petition as time-barred.

On August 17, 1998, Ford filed a notice of appeal and moved for a certificate of appealability ("COA"). The district court denied his motion for a COA on August 25, 1998. Ford then sought a COA from this court and his motion was consolidated with a similar motion that he filed in the Weed case. *See infra* Section I.C.

## B. The Weed Case

The procedural history of the Weed case is virtually identical. On October 11, 1988, Ford and Von Villas were convicted of first-degree murder and conspiracy to commit murder for killing Thomas Weed in violation of California Penal Code §§ 182, 187, 190.2(a)(1). After the jury deadlocked during the penalty phase of Ford's trial, the trial court sentenced him to life without the possibility of parole on the murder count and stayed a concurrent term of twenty-five years to life on the conspiracy count.

Ford appealed the judgment and, on November 16, 1992, the California Court of Appeal affirmed his convictions. On February 11, 1993, the California Supreme Court issued a summary denial of Ford's direct appeal. Ford filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on October 4, 1993. *See Ford v. California,* 510 U.S. 838, 114 S.Ct. 118, 126 L.Ed.2d 83 (1993).

On April 19, 1997, Ford signed and delivered to the prison authorities a *pro se* federal habeas corpus petition. His petition was forwarded to the clerk and filed in the United States District Court for the Central District of California on May 5, 1997.[4] Ford also filed a motion to stay the

---

**3.** In his second petition, Ford re-alleged all of the grounds from his initial petition and also alleged that he was entitled to relief because his trial and appellate counsel were constitutionally ineffective.

**4.** In his initial federal petition, Ford claimed that he was entitled to relief on the following grounds: (1) a tape recording was entered into evidence in violation of his constitutionally cognizable expectation of privacy; (2) there was Fourth Amendment violation because the seizure of evidence exceeded the scope of the warrant; (3) a warrant for a tape recording was obtained in violation of Title III, the Omnibus Crime Act, 18 U.S.C. § 2510 et seq.; (4) a tape recording was used in violation of his protected marital privilege and invaded his constitutional right to confidential communication; (5) Fourteenth Amendment violation resulting from a subsequent judge's action in changing the original judge's ruling on a PC § 995 motion; (6) due process violation resulting from an inaccurate ruling regarding "overt acts" among conspirators; (7) trial court's refusal to give the jury an instruction regarding the need for unanimous agreement on each specific overt act; (8) confrontation clause violation resulting from court's refusal to allow Ford to impeach the prosecution's witnesses about prior convictions and biases; (9) violation of the right to a fair trial resulting from admission of prejudicially misleading photographs; (10)

federal habeas corpus petition containing exhausted grounds while he exhausted the then-unexhausted state claims. As in the Loguercio case, the magistrate judge gave Ford the choice of either (1) dismissing the petition without prejudice and re-filing after exhaustion of the unexhausted claims or (2) dismissing the unexhausted claims and proceeding with only the exhausted claims. The magistrate issued an order, however, in which he stated that the district court did not have the discretion to stay a mixed petition so that the motion to stay the proceedings was denied. Additionally, the order stated that Ford was to notify the court within approximately two and one-half weeks if he wanted to waive the unexhausted claims and proceed only on the exhausted claims. Ford did not so notify the court. As a result, on September 9, 1997, the magistrate judge issued his report recommending that the district court dismiss his habeas petition without prejudice because it was a partially-exhausted petition under *Rose*, 455 U.S. at 522, 102 S.Ct. 1198. On October 14, 1997, the district court adopted the magistrate's report and dismissed Ford's petition, purportedly without prejudice.

On October 24, 1997, Ford filed a state habeas corpus petition in the California Supreme Court. The petition was summarily denied on March 25, 1998. Ford then returned to federal court and, on April 7, 1998, he filed a second *pro se* federal habeas corpus petition in the district court.[5] The state filed an answer to the petition on April 29, 1998 and then, on May 11, 1998, filed a motion to dismiss alleging that the petition was untimely under AEDPA's one-year statute of limitations. Ford filed an opposition to the motion to dismiss on May 27, 1998 and the state filed its reply on June 1, 1998.

On June 3, 1998, the magistrate judge issued his report recommending that Ford's petition be dismissed with prejudice as untimely. On June 23, 1998, Ford filed an objection to the magistrate's report. On June 30, 1998, the district judge adopted the magistrate's findings, conclusions, and recommendations and dismissed Ford's petition with prejudice. On July 27, 1998, Ford filed a notice of appeal and a motion for a COA. The district court denied the motion on August 3, 1998. Ford then filed a motion for a COA in this court.

---

misleading jury instruction on motive; and (11) ambiguous instruction on admissions.

**5.** In his second petition, Ford re-alleged all of the grounds from his initial petition and also alleged the following new grounds: (1) prosecution erroneously used testimony obtained from a drugged alleged co-conspirator; (2) the use of police agents to inculpate him by false testimony violated *Miranda* and *Wong Sun* and the Fourth, Fifth, Sixth, and Fourteenth Amendments; (3) prosecution misstated evidence and other case factors to cause the indictment and selective prosecution of Ford, which violated the truth-in-evidence doctrine and violated his constitutional rights; (4) judicial misfeasance, abuse of discretion, and nonfeasance misdirected the jury and violated Ford's rights to an impartial jury, due process, and equal protection; and (5) ineffective assistance of counsel.

Respondent also contends that Ford's assertion in his second petition that two exceptions to the Fourth Amendment warrant requirement do not apply to his case are new claims. The contentions, however, do not constitute claims, but are simply arguments in support of the claim of a Fourth Amendment violation—a claim that he asserted in his initial petition. Additionally, respondent contends that Ford's claim that "an investigative authority that has no coercion for, or authority over, jail security receives no deference for intrusions on inmate/citizen privacy" is newly-raised. Here, too, we hold that Ford has not asserted a claim but rather advanced an argument in support of the claims that he previously raised in grounds one and four of his initial petition, *see supra* note 3.

## C. Consolidation of Cases

On January 22, 1999, we consolidated Ford's two cases—the Weed case and the Loguercio case—and granted his request for a COA on the question whether his federal habeas petitions were timely under AEDPA's one-year statute of limitations, 28 U.S.C. § 2254(d).

## II. ANALYSIS

■ We review a district court's decision to dismiss a petition for a writ of habeas corpus, including a dismissal on timeliness grounds, *de novo*. *See Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir.1999). Because Ford's convictions and sentences in both the Weed and Loguercio cases became final prior to the enactment of AEDPA, Ford had one year from AEDPA's effective date of April 24, 1996 in which to file his federal habeas corpus petitions. *See* 28 U.S.C. § 2254(d); *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir.2001). Thus, absent statutory or equitable tolling, Ford's federal habeas petitions would be timely only if filed prior to April 24, 1997. *See id.* at 1244 (holding that Federal Rule of Civil Procedure 6(a) applies to the calculation of AEDPA's one-year statute of limitations). In both the Loguercio and Weed cases, Ford's initial federal habeas petitions were timely filed.

■ Ford signed both of his initial federal habeas petitions on April 19, 1997, five days before his one-year statute of limitations would have run. The petitions were lodged as received by the district court on April 25, 1997 and subsequently filed on May 5, 1997. According to the prisoner's mailbox rule, Ford's petitions are deemed "filed" for purposes of AEDPA's statute of limitations the moment that he delivers them to the prison authorities for forwarding to the clerk of the district court. *See, e.g., Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir.2001); *Saffold v. Newland*, 224 F.3d 1087, 1091 (9th Cir.2000), *vacated on other grounds sub nom, Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). Because Ford signed both petitions and delivered them to the prison authorities for mailing before April 24, 1997, the petitions were timely filed.

## A. The District Court's Failure to Inform Ford About its Ability to Consider his Stay Motions

■ Along with the habeas petitions, Ford filed motions asking the district court to stay the petitions on the exhausted claims while he returned to state court to exhaust the then-unexhausted claims. The district court correctly stated that it did not have the discretion to stay Ford's mixed petitions. *See Rose*, 455 U.S. at 509, 102 S.Ct. 1198 (holding that the district court must dismiss a habeas petition containing unexhausted claims); *Calderon v. District Court (Gordon)*, 107 F.3d 756 (9th Cir.1997) (stating that it was error for the district court to stay federal habeas proceedings in order to permit a petitioner who filed a mixed petition to exhaust his unexhausted claims in state court); *Greenawalt v. Stewart*, 105 F.3d 1268 (9th Cir. 1997) (rejecting an argument that the district court abused its discretion when it dismissed, rather than stayed, a mixed petition and holding that the district court was obligated under *Rose* to dismiss the mixed petition).[6] However, the district

---

6. *But see Neuschafer v. Whitley*, 860 F.2d 1470, 1472 n. 1 (9th Cir.1988) ("When a petitioner has not exhausted his state remedies before filing a federal habeas petition, a district court may hold the federal petition in abeyance, issue a stay of execution, and allow the petitioner an opportunity to exhaust his state remedies."). We subsequently stated that the *Neuschafer* footnote did not apply to cases involving mixed federal habeas petitions. *See Taylor*, 134 F.3d at 989; *see also Greenawalt*, 105 F.3d at 1274 (characterizing the footnote as dicta).

court could have entertained Ford's motions for a stay had he opted to dismiss the unexhausted claims from his petitions and proceed with only the exhausted claims. In that case, the district judge could have granted the stay motions, thus permitting Ford to exhaust his then-unexhausted claims in state court. This would have advanced the court's interest in "facilitat[ing] decision on the merits, rather than on pleadings or technicalities." *James v. Giles,* 221 F.3d 1074, 1078 (9th Cir.2000). As we recently said in *Kelly v. Small,* "The exercise of discretion to stay the federal proceeding is particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]." *Kelly,* 315 F.3d at 1070; *see also Freeman v. Page,* 208 F.3d 572, 577 (7th Cir.2000), *cert. denied,* 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (stating that outright dismissal of a mixed federal habeas petition "is not proper when that step could jeopardize the timeliness of a collateral attack"), *cert. denied,* 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277. When Ford returned to federal court, the district judge could then have permitted Ford to amend his originally-filed federal petitions to incorporate the newly-exhausted claims. *See, e.g., James,* 269 F.3d at 1126–27 (holding that "a district court may, in its discretion, allow a petitioner to amend a mixed petition by deleting the unexhausted claims, hold the exhausted claims in abeyance until the unexhausted claims are exhausted, and then allow the petitioner to amend the stayed petition to add the now-exhausted claims"); *Taylor,* 134 F.3d at 989 (same); *Fetterly v. Paskett,* 997 F.2d 1295, 1301–02 (9th Cir.1993) (holding that the district court has the discretion to stay a habeas corpus petition containing only exhausted claims to give the petitioner time to exhaust several newly-discovered claims in state court).

■ In this case, however, the district court did not inform Ford, who was proceeding *pro se* at the time, about the highly technical requirement that he must first dismiss the unexhausted claims and then renew the stay motions that he attempted to make prematurely, despite our past admonition that "[t]he rights of *pro se* litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in the loss of the opportunity to prosecute or defend a lawsuit on the merits." *Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984). We have repeatedly emphasized that a *pro se* litigant "is entitled to certain procedural protections." *James,* 269 F.3d at 1126; *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that courts must liberally construe *pro se* pleadings); *Johnson v. State of California,* 207 F.3d 650, 653 (9th Cir.2000) (same). With respect to *pro se* pleadings, we have held that "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992); *see also James,* 269 F.3d at 1126 ("This court has held that leave to amend, though within the discretion of the trial court, should be guided by the underlying purpose of Rule 15(a) of the Federal Rules of Civil Procedure, which was to facilitate decision on the merits, rather than on technicalities or pleadings."); *James,* 221 F.3d at 1077 (stating that *pro se* habeas litigants are entitled to a "statement of the grounds for dismissal and an opportunity to amend the complaint to overcome [any] deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by

amendment" (internal quotations omitted)).[7]

Here, there was a procedural deficiency—the filing of mixed habeas petitions—that prevented the district court from considering Ford's stay motions. To correct that deficiency, Ford was required to amend his habeas petitions to dismiss the unexhausted claims and proceed with only the exhausted claims, and then seek a hearing on the motions to stay the exhausted claims. Given that Ford was proceeding *pro se*, the district court was obligated to inform him of his options with respect to his mixed habeas petitions: to advise him that it would have the power to consider his stay motions only if he opted to proceed with his exhausted claims and dismiss the unexhausted claims. *See Zarvela*, 254 F.3d at 382.

Had Ford been properly informed of the applicable legal procedure, he in all likelihood would have chosen to amend his petitions and the district court almost certainly would have granted the stay motions. *See id.* at 380 (holding that granting a stay is "the only appropriate[remedy] where an outright dismissal 'could jeopardize the timeliness of a collateral attack'" (quoting *Freeman*, 208 F.3d at 577)); *see also Kelly*, 315 F.3d at 1070 (finding that the decision "to stay the federal proceeding is particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]."). Thus, the district court, by failing to inform Ford about

an option that, if taken, would have permitted the district court to grant his stay motions on the merits, deprived him of "a meaningful opportunity to amend" his pleadings. *James*, 269 F.3d at 1126. More important, the district court's failure to so inform Ford deprived him of the opportunity to exhaust his unexhausted claims and then amend the stayed petitions to incorporate the newly-exhausted claims, and thus to preserve his right to pursue all of his claims. *See Anthony*, 236 F.3d at 577 (holding that amendment of habeas petitions under Federal Rule of Civil Procedure 15(c) should be "freely given"). Our analysis is not affected by the fact that the district court has discretion to grant or deny Ford's stay requests, especially where, as here, the discretion is more a matter of form than substance, and a denial of the request would likely constitute error. As the First Circuit recently recognized, "[T]here is a growing consensus that a stay is required when dismissal could jeopardize the petitioner's ability to obtain federal review." *Nowaczyk v. Warden, N.H. State Prison*, 299 F.3d 69, 79 (1st Cir.2002); *see also Zarvela*, 254 F.3d at 380 (explaining why the district court is required to grant a stay when the failure to do so would, as here, forfeit petitioner's federal claims); *Freeman*, 208 F.3d at 577 (holding that dismissal is "not proper" if it could "jeopardize the timeliness of a collateral attack"); *James*, 269 F.3d at 1126 (holding that it is error to fail to inform a habeas petitioner about his opportunity to amend a partially-exhausted petition even

---

7. *See also Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir.1995) ("When the district court transforms a dismissal into a summary judgment proceeding, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings, and must afford a reasonable opportunity to present all pertinent material[because the] notice requirement is consistent with the rule of liberal construction of pleadings presented by

*pro se* litigants, particularly when dismissal is considered." (internal quotations omitted)); *cf. Wyatt v. Terhune,* 315 F.3d 1108, 1118–19 (9th Cir.2003) (construing the Prison Litigation Reform Act's exhaustion requirement as an affirmative defense rather than a technical pleading requirement because, to hold otherwise, "would run contrary to the liberal approach we take to pleadings by *pro se* prisoners").

though the decision to grant leave to amend is within the discretion of the trial court). Because the district court's failure to explain the procedural deficiency that precluded it from granting Ford's stay motions deprived Ford of a fair and informed opportunity to have his stay motions heard, to exhaust his unexhausted claims, and ultimately to have his claims considered on the merits, we conclude that the district court's action constituted prejudicial error.

## B. The District Court's Failure to Inform Ford that he was Time–Barred Under AEDPA

The district court's failure to ensure that Ford had the opportunity to make an informed choice as to whether to amend the petitions extends beyond its failure to inform him of the necessity of doing so in order to have his stay motions considered by the court. The district court further erred when it failed to inform Ford that, on the face of the complaints, he would be time-barred under AEDPA on all of his claims if he either failed to amend his petitions or chose the option of dismissing them and returning to state court to exhaust the unexhausted claims. Although Ford timely filed both of his initial federal habeas petitions, he was only timely by a few days. *See supra* Section II. Over four months then passed before the magistrate judge issued his findings and recommendations in Ford's two cases. Because AEDPA's one-year limitations period is not statutorily tolled during the pendency of a federal habeas petition, *see Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), the statute of limitations was still running during that four month period. Thus, when the district court gave Ford the option to dismiss his petitions and return to state court to exhaust his then-unexhausted claims, his time for filing new federal petitions had already expired by more than four months

(barring an extension on the ground of equitable tolling). Predictably, when he returned to federal court after having exhausted his claims in state court, his federal petitions were dismissed as time-barred.

■ When the district court presented Ford with the option of either dismissing his mixed petitions and returning to state court to exhaust his then-unexhausted claims or amending the petitions to proceed with only the exhausted claims, it not only failed to inform him that on the face of the complaints AEDPA's one-year statute of limitations had run on both of his petitions and that his petitions would therefore be barred from re-filing in federal court if he elected the court's first option, but it definitively, although not intentionally, misled him by informing him that if he opted to dismiss the petitions to return to state court to exhaust his claims, the dismissal would be *without prejudice*. *See Tillema v. Long*, 253 F.3d 494, 503–04 (9th Cir.2001) ("Because there is no statutory tolling of AEDPA's limitation period during the pendency of federal habeas petitions, the district court's erroneous dismissal of Tillema's petition would, barring some other circumstance, have literally and immediately extinguished his right to federal habeas review. In this case, therefore, it cannot accurately be said that the dismissal of Tillema's petition was, as the court's order stated, 'without prejudice.' "); *Anthony*, 236 F.3d at 573 (recognizing that "AEDPA's one-year statute of limitations ... has rendered outright dismissal perilous to some litigants, because petitioners ... may find themselves time-barred when they attempt to resubmit their exhausted claims to the district court"). Other circuits have also noted the deceptive nature of a dismissal without prejudice when the claims dismissed are time-barred; in *Rodriguez v. Bennett*, 303 F.3d 435 (2d Cir. 2002), for example, the Second Circuit explained that for a petitioner dismissed 'without prejudice' after a year in federal

habeas proceedings, 'the 'without prejudice' provision was an illusion; petitioner could never succeed in timely refiling the petition because he would already be time-barred.' *Rodriguez*, 303 F.3d at 439.[¶] We have recognized a district court's obligation to avoid misleading petitioners. In *Valerio v. Crawford*, 306 F.3d 742 (2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003), the en banc court instructed the district court to inform a petitioner when claims to be dismissed 'without prejudice' would actually be time-barred. *See Valerio*, 306 F.3d at 770–71. This simple step helps avoid the unnecessary forfeiture of petitioners' constitutional rights. Here, what the district court should have told Ford is that the dismissal, although ostensibly without prejudice, would actually result in a dismissal *with prejudice* unless he could establish that at the time of dismissal he was entitled to equitable tolling. More generally, as the

Second Circuit said in *Zarvela*, a case in which the AEDPA period had not yet run, the district court, when informing a habeas petitioner of his options with respect to a mixed petition, should "alert the petitioner to the one-year limitations period of AEDPA and to the fact that a portion of that period has already elapsed." *Zarvela*, 254 F.3d at 382. Indeed, a district court is obligated to do no less. Here, the district court's failure to alert Ford to the current status of his claim under the AEDPA one-year statute of limitations clearly deprived him of the opportunity to make a "meaningful" choice between the two options. *See Valerio*, 306 F.3d at 770–71 (finding that the district court must inform the petitioner of a potential time-bar before the petitioner chooses whether to amend his mixed petition, in order to make that choice meaningful); *James*, 269 F.3d at 1126; *Ferdik*, 963 F.2d at 1261.[8] The error was particularly egregious because it

**8.** Contrary to the dissent's assertion, requiring the district judge to inform a *pro se* petitioner if, on the face of his complaint, the AEDPA one-year statute of limitations has expired during the pendency of his federal habeas petition does not transform the district judge into the petitioner's paralegal. Nor, of course, does requiring him to advise *pro se* petitioners of the existence of the AEDPA one-year limit and the fact that a portion of that period has already elapsed. We already require the district judge to inform a *pro se* habeas petitioner that he has the option of dismissing the mixed petition without prejudice and returning to state court to exhaust the then-unexhausted claims. *See, e.g., James*, 269 F.3d at 1125–26. To accurately explain this option, the judge must inform the petitioner if, on the face of the complaint, the AEDPA statute of limitations has expired such that any dismissal of the mixed petition would necessarily be "with prejudice," absent equitable tolling. *See Valerio*, 306 F.3d at 770–71. To do otherwise affirmatively misleads the *pro se* petitioner about the options available to him.

Our holding today does not open the floodgates, as our dissenting colleague fears, for future requirements that district judges inform *pro se* petitioners about the many factors that could affect petitioners' decisions regarding how to proceed with mixed petitions. Notifying a *pro se* plaintiff of the existence of the AEDPA limitation and the fact that part or all of that period (whichever is the case) has already run is a relatively simple task. Judge Silverman is undoubtedly correct that a number of factors could and likely would affect a petitioner's decision regarding how to proceed. What his dissent fails to recognize, however, is that the district judge, when informing the petitioner about his options, does not ordinarily discuss (let alone affirmatively mislead the petitioner about) any of these other factors. In contrast, the judge affirmatively misleads the petitioner by stating that dismissal of a mixed petition is "without prejudice" if AEDPA's one-year statute of limitations had already expired while the federal court was considering the mixed petition. A district judge need not advise a *pro se* petitioner about every possible factor that could affect his decision, but when he does inform the *pro se* petitioner about his options, he must at the very least provide accurate, and not misleading, information.

inevitably resulted in the subsequent dismissal of all of Ford's claims as time-barred. *See Garaux*, 739 F.2d at 439–40 (stating that the protection of a *pro se* litigant's rights is particularly important when highly technical pleading requirements "might result in the loss of the opportunity to prosecute or defend a lawsuit on the merits."). Because the district court's failure fairly or fully to explain the consequences of the options it presented to Ford deprived him of the opportunity to make a meaningful choice, and as a result subsequently caused the district court to conclude that all of his claims were time-barred, we conclude that the failure constituted prejudicial error.

### C. The Effect of the District Court's Failure to Inform Ford of his Options before Dismissing his Initial Federal Habeas Petitions on the Timeliness of his Second Federal Habeas Petitions[9]

The district court's failure to inform Ford, before dismissing his initial petitions, that his claims would be time-barred under AEDPA if he chose to dismiss the petitions and return to state court, and that the district court could not consider his stay motions and hold the petitions in abeyance unless he opted to proceed with his exhausted claims, necessarily affects our analysis of its decision to dismiss his second petitions, because, had the district court fairly and properly explained Ford's options to him, it is most unlikely that his second petitions would have been dismissed as time-barred. Rather, Ford would almost certainly have amended his mixed petitions by dismissing the then-unexhausted claims, moved for and undoubtedly received a stay of his exhausted claims, exhausted the then-unexhausted claims, and successfully amended the initial petitions to include the newly-exhausted claims. *See, e.g., Taylor*, 134 F.3d at 989 (describing the three-step process for amending a mixed petition, staying the exhausted claims, and re-filing an amended petition).

██ Although we cannot place Ford back in the same position that he was in before the erroneous dismissal of his initial petitions, we can ensure that his rights are not unduly prejudiced as a result of the district court's errors. Toward that end, we hold that a *pro se* habeas petitioner who files a mixed petition that is improperly dismissed by the district court, and who then (following the district court's erroneous legal statements) returns to state court to exhaust his unexhausted claims and subsequently re-files a second petition without unreasonable delay, may employ the amendment procedures of Federal Rule of Civil Procedure 15(c) ("Rule 15(c)") to have the second petition relate back to and preserve the filing date of the improperly-dismissed initial petition.[10] In so doing, we follow the approach taken by the Second Circuit in *Zarvela*, which held under similar circumstances that "[a] *pro se* litigant should [not] lose his opportunity to present his constitutional challenge to his conviction." *Zarvela*, 254 F.3d at 382–83.

We have previously held that if a habeas petitioner's mixed petition is *properly* dismissed without prejudice and he *accepts* the proper dismissal of that mixed petition,

---

9. The analysis in this section relates only to those claims in Ford's second federal habeas petitions that were originally filed in his initial federal habeas petitions. See *infra* Section II.D. for a discussion of the claims that were asserted for the first time in Ford's second federal habeas petitions.

10. Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

he may not later employ Rule 15(c)'s relation back doctrine to justify an untimely-filed second petition. *See Green v. White,* 223 F.3d 1001, 1002 (9th Cir.2000); *Van Tran v. Lindsey,* 212 F.3d 1143, 1148 (9th Cir.2000), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274, *overruled on other grounds by Lockyer v. Andrade,* —— U.S. ——, ——, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); and *Henry v. Lungren,* 164 F.3d 1240, 1241 (9th Cir.1999). We have also held, however, that if a mixed petition is *improperly* dismissed without prejudice and the petitioner does *not accept* the improper dismissal, but elects instead to submit a second petition with only the exhausted claims, the court may treat the second petition as an amendment that relates back to and preserves the original filing date of the mixed petition under Rule 15(c), even if the AEDPA statute of limitations expired prior to the second filing. *See Anthony,* 236 F.3d at 572–74. Ford's petitions, like the petition in *Anthony* and unlike the petitions in *Green, Van Tran,* and *Henry,* were *improperly* dismissed by the district court.[11] Moreover, in Ford's case, like Anthony's and unlike in Green's, Van Tran's, and Henry's, there was no informed acceptance by the petitioner of the district court's dismissal of the mixed petitions.[12] Although the petition that Anthony submitted after his mixed petition was improperly dismissed contained only his exhausted claims, we see no difference for AEDPA statute of limitations purposes between Anthony's action and Ford's decision to rely on the district court's erroneous instruction and to re-submit all of his claims after exhausting the unexhausted ones in state court.[13] Thus, we hold that Ford, like Anthony, is entitled to apply Rule 15(c) to his later-filed petitions.[14]

---

**11.** *Compare Anthony,* 236 F.3d at 574 (holding that the district court's outright dismissal of Anthony's mixed petition without having adequately informed him of his options was "improper") *and* discussion *supra* Sections II.A. & II.B. (explaining why Ford's initial habeas petitions were improperly dismissed) *with Anthony,* 236 F.3d at 574 n. 1 (stating that the dismissal of the mixed habeas petitions in *Green, Van Tran,* and *Henry* were "proper").

**12.** The petitioners in *Green, Van Tran* and *Henry* "accepted" the proper dismissal of their mixed petitions and indeed had no reason not to. The district court's orders dismissing the petitions without prejudice accurately stated the then-applicable law, because the dismissals occurred prior to AEDPA's effective date. *Compare* discussion *supra* Section II.A. & II.B (explaining why Ford's "acceptance" of the dismissal of his initial petitions without prejudice was not only uninformed but was based on misleading statements of the law by the district court and was therefore invalid).

**13.** In both Ford's case and Anthony's, the second petitions were filed after the AEDPA one-year limitations period had expired. In neither case did the petitioners unreasonably delay in taking the actions that they took. Ford, after timely pursuing exhaustion in state court by filing a state habeas petition within three weeks of the federal court's dismissal of his mixed petitions, re-filed his petitions in federal court within two weeks of the state court's dismissal of his state habeas petitions. *See Zarvela,* 254 F.3d at 381 (holding that a habeas petitioner has not unreasonably delayed if he files a state habeas petition within 30 days of the federal court's dismissal of his mixed petition and if he re-files in federal court within 30 days of the state court's denial of his claims). Anthony also "proceeded with reasonable diligence." *Anthony,* 236 F.3d at 577.

**14.** The dissent relies principally on our decision in *Green v. White,* 223 F.3d 1001 (9th Cir.2000), in which we held that Green's second habeas petition did not relate back to his first mixed petition after the mixed petition had been dismissed without prejudice and the petitioner had returned to state court to exhaust his then-unexhausted claims. The dissent argues that the facts in Ford's cases are exactly like those in *Green* and that *Green* therefore compels us to uphold the district court's dismissal of Ford's second petitions as

One problem remains with respect to the remedy available to Ford. We cannot now return the parties to the point where the district court could decide whether to grant a stay to permit Ford to exhaust his claims. Events have overtaken us. Ford has already exhausted all of his claims. As a result, there is no purpose to be served by returning this case to the district court and requiring the district judge to rule on the stay motions. Rather, we agree with the Second Circuit that, "[b]ecause [petitioner's] initially filed petition was timely when filed and should have been stayed, subject to appropriate conditions, and because his prompt trip to and from the state courts satisfied the conditions that should have been included in a stay, the initial petition may be considered on its merits." *Zarvela*, 254 F.3d at 383. Thus, we treat Ford's initial petitions as if the district court had permitted him to dismiss the unexhausted claims and had then granted his stay motions in order to allow him to exhaust his then-unexhausted claims. Applying Rule 15(c) to Ford's current petitions, we further hold that those claims that were originally included in his initial petitions relate-back and serve to amend the improperly-dismissed claims in his initial petitions. Because Ford's initial habeas petitions were filed within AEDPA's one-year statute of limitations, his amended petitions relate back to that filing date and are therefore timely with respect to the claims included in those initial petitions.[15]

time-barred. This assertion, however, ignores three critical and dispositive differences between Ford's cases and *Green*.

First, while Ford was proceeding *pro se* when he filed his first and second habeas petitions, nowhere in the *Green* opinion does it state that Green was proceeding without counsel. In fact, one of Green's contentions on appeal was that the AEDPA statute of limitations should be equitably tolled "because any delay [wa]s a result of his *and his attorney's* reliance" on Supreme Court precedent. *Green*, 223 F.3d at 1003 (emphasis added). As we emphasized *supra* Sections II.A & II.B., Ford's *pro se* status is one of the principal reasons why we hold that the district judge's failure fairly and fully to inform him about his options with respect to the mixed petitions and the stay motions constitutes prejudicial error.

Second, the district judge in *Green* did not mislead Green when he informed him that he had the option of dismissing his mixed petition without prejudice in order to return to state court to exhaust his then-unexhausted claims. At the time that the district court dismissed Green's initial habeas petition without prejudice, Green still had almost 11 months remaining in his one-year AEDPA statute of limitations in which to exhaust his then-unexhausted claims.

Finally, there is no indication that Green ever filed a motion to stay the federal habeas proceedings so that he could exhaust the unexhausted claims in his initial mixed petition. Ford did file stay motions. The district court's error in failing to inform Ford that his motions could not be considered unless he opted to amend his mixed petition and dismiss his then-unexhausted claims is sufficient, standing alone, to merit relief.

15. Although we need not reach the question here, Ford would also be entitled to relief under equitable tolling principles. The district court's error in failing properly and fully to inform Ford about his options with respect to the mixed petitions and in misleading him as to the legal effect of a dismissal of his petitions were "extraordinary circumstances" beyond Ford's control that would require equitable tolling of AEDPA's statute of limitations. *See, e.g., Tillema*, 253 F.3d at 504 (holding that the district court's failure to afford a federal habeas petitioner who filed a mixed petition the opportunity to abandon his sole unexhausted claim as an alternative to dismissal of his first habeas petition entitled him to equitable tolling). The Fifth Circuit recently found similar circumstances appropriate for equitable tolling in the context of a prisoner's § 1983 suit dismissed ostensibly without prejudice for failure to exhaust administrative remedies. In *Clifford v. Gibbs*, 298 F.3d 328 (5th Cir.2002), the court recognized the impropriety of a dismissal without prejudice that actually left claims "forever precluded." *Id.* at 333. It held that claims should be equitably tolled when the "district

## D. Claims Ford Asserts for the First Time in his Second Federal Habeas Petitions

██ Although we hold that those claims that were originally asserted in Ford's initial petitions and then subsequently reasserted in his second petitions were timely filed under Rule 15(c), the same analysis does not apply to the claims that Ford asserted for the first time in his second petitions. Rule 15(c) specifically states that the claim or defense asserted in the amended pleading must "ar[i]se out of the conduct, transaction, or occurrence *set forth or attempted to be set forth in the original pleading*" (emphasis added). In this case, there were two claims in the Loguercio case and five claims in the Weed case that Ford raised in his second petitions that he did not raise in his initial petitions.[16] Because those claims were not set forth in the original pleadings and were not "newly-discovered" claims, *see Fetterly*, 997 F.2d at 1299–1301,[17] we hold that Ford may not invoke Rule 15(c) to add them to his petitions at this late stage. *See Anthony*, 236 F.3d at 576 (stating that one of the central policies of Rule 15(c) is to "ensur[e] that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment").[18]

██ With respect to the claims raised for the first time in the second Weed petition, Ford contends that AEDPA's one-year statute of limitations should be equitably tolled because he did not receive the complete set of his legal papers from his appellate attorney until July of 1997. If the statute of limitations were tolled until July of 1997, Ford's April, 1998 second federal habeas petition would be timely under AEDPA. In support of this equitable tolling claim, Ford submitted letters that he exchanged with his former counsel demonstrating his attempts to obtain his legal papers. The State points out, however, that, according to the correspondence, Ford's counsel first forwarded his file to him in June of 1995 and that Ford waited over two years, until after the AEDPA statute of limitations period had expired, to write his counsel stating that he did not receive a complete set of records. Ford responds by asserting that he was unsuccessfully trying to obtain the complete record from his counsel during the two year period between 1995 and 1997—a fact that, on the record before us, is uncorroborated by independent evidence. Several courts have held that a lack of access to one's legal papers may constitute an "extraordinary circumstance" that would warrant equitable tolling in in-

---

court's dismissal . . . without prejudice actually operates as a dismissal with prejudice because[the petitioner] is barred from returning to federal court after exhausting his remedies because limitations has already run." *Id.* Ford faced the same constraints. However, because we grant Ford relief on statutory grounds, we do not resolve any equitable tolling claim here.

**16.** *See supra* notes 2 & 4 (listing the new claims).

**17.** With respect to the newly-asserted claim of a due process violation resulting from the use of testimony obtained from a drugged alleged co-conspirator in the Weed case, Ford argues that he did not discover that the main witness

against him, Jan Olgilvie, was threatened by the police and drugged until after his conviction was final. However, letters between Ford and Olgilvie demonstrate that Ford was aware of the threats and use of drugs as early as May of 1993; yet, he did not file his first federal habeas petitions until April of 1997.

**18.** Ford contends that all of his Weed claims—not only the claims raised for the first time in the second petition, but those asserted in the first petition as well—should be heard on the merits because he passes through the "actual innocence" gateway of *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). We reject this argument because Ford has not presented sufficient evidence to pass through that gateway.

stances in which the state is responsible for the unavailability. *See, e.g., Whalem/Hunt,* 233 F.3d at 1146; *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) (holding that confiscation of legal papers constitutes an "extraordinary circumstance"). Although routine instances of attorney negligence do not generally constitute "extraordinary circumstances" entitling a habeas petitioner to equitable tolling, *see, e.g., Miranda v. Castro,* 292 F.3d 1063 (9th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 496, 154 L.Ed.2d 399 (holding that attorney miscalculation of AEDPA limitations period did not merit equitable

tolling),[19] there are instances in which an attorney's failure to take necessary steps to protect his client's interests is so egregious and atypical that the court may deem equitable tolling appropriate, *see, e.g., Calderon v. U.S. Dist. Court* (Beeler), 128 F.3d 1283, 1288 (9th Cir.1997) (holding that AEDPA's statute of limitations was equitably tolled when the petitioner's counsel unexpectedly moved out of the state and left an unusable work product behind for replacement counsel), *overruled on other grounds by Calderon v. U.S. Dist. Court* (Kelly), 163 F.3d 530, 540–41 (9th Cir. 1998) (en banc).[20]

**19.** *See also Frye v. Hickman,* 273 F.3d 1144, 1146 (9th Cir.2001), *cert. denied,* 535 U.S. 1055, 122 S.Ct. 1913, 152 L.Ed.2d 823 (2002) ("[T]he miscalculation of the limitations period by ... counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling."); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000), *cert. denied,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (stating that "counsel's confusion about the applicable statute of limitations does not warrant equitable tolling"); *United States v. Saro,* 252 F.3d 449, 455 (D.C.Cir.2001), *cert. denied,* 534 U.S. 1149, 122 S.Ct. 1111, 151 L.Ed.2d 1005 (2002) (finding no extraordinary circumstances because although lawyer failed to file, petitioner did not file on his own until three months later); *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000) (stating that counsel's mistake in interpreting a statutory provision does not constitute extraordinary circumstances); *Sandvik v. United States,* 177 F.3d 1269, 1272 (11th Cir.1999) (stating that counsel's use of regular mail as opposed to private delivery service does not merit equitable tolling); *Taliani v. Chrans,* 189 F.3d 597, 598 (7th Cir.1999) (stating that "normally, however, a lawyer's mistake is not a valid basis for equitable tolling").

**20.** *See also Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (recognizing that, in a few cases, egregious conduct of counsel will merit equitable tolling); *Plowden v. Romine,* 78 F.Supp.2d 115, 119 (E.D.N.Y.1999) (same); *Vasquez v. Greiner,* 68 F.Supp.2d 307,

309–11 (S.D.N.Y.1999) (stating that equitable tolling may be available to a habeas petitioner who did not learn from his attorney that his conviction was final until after the AEDPA limitations period had expired); *Baskin v. United States,* 998 F.Supp. 188, 189–90 (D.Conn.1998) (granting equitable tolling to a habeas petitioner because his counsel waited thirteen months to tell him that his petition for certiorari had been denied).

In a related context, there are several cases in which courts have held that egregious conduct by counsel warrants equitable tolling of the statute of limitations for filing an EEOC complaint. *See, e.g., Seitzinger v. Reading Hosp. and Med. Ctr.,* 165 F.3d 236, 239–41 (3d Cir.1999) (stating that "[t]here are, however, narrow circumstances in which the misbehavior of an attorney may merit such equitable relief" and finding that this was such a case because counsel lied to his client when he told him that he had filed a petition); *Cantrell v. Knoxville Comm. Dev. Corp.,* 60 F.3d 1177, 1180–81 (6th Cir.1995) (stating that this case was not " 'garden variety' attorney negligence" because counsel abandoned his client due to counsel's mental illness); *Doherty v. Teamsters Pension Trust Fund,* 16 F.3d 1386, 1394 (3d Cir.1994) (stating that, although attorney mistakes do not normally constitute extraordinary circumstances, in a case in which counsel filed a complaint in the wrong forum due to stress resulting from the death of co-worker, equitable tolling may be justified); *Burton v. U.S. Postal Serv.,* 612 F.Supp. 1057, (N.D.Ohio 1985) (holding that equitable tolling is available when an attorney abandoned his client and left town). Some courts

There are no cases in this circuit determining whether an attorney's failure or refusal to provide a habeas client with important parts of his legal file may rise to the level of "extraordinary circumstances" for purposes of equitable tolling. We prefer not to decide that question here, because the factual record is insufficiently developed. As in *Whalem/Hunt,* 233 F.3d at 1148, the district court in Ford's case did not give the petitioner an opportunity to amend his petition or expand his declaration and did not hold an evidentiary hearing. Because equitable tolling issues "are highly fact-dependent, and because the district court is in a better position to develop the facts and assess their legal significance in the first instance," *id.,* we remand Ford's additional Weed claims to the district court with instructions that it develop an adequate evidentiary record before again determining whether the statute of limitations should be equitably tolled as to those claims.[21]

## III. CONCLUSION

With respect to those claims that were originally raised in Ford's initial federal habeas petitions and then re-filed in his second petitions, we vacate the district court's dismissal of the second petitions as untimely and remand them so that the district court may consider the claims on the merits. With respect to the five claims that were raised initially in Ford's second Weed petition, we vacate their dismissal and remand for the development of a factual record as to whether the statute of limitations should be equitably tolled. With respect to the two ineffective assistance of counsel claims raised for the first time in Ford's second Loguercio petition, we affirm their dismissal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

SILVERMAN, Circuit Judge, dissenting:

Ford filed an improper mixed petition. The district court correctly offered him the option of either amending the petition by deleting the unexhausted claims and proceeding with only those that had been exhausted, or suffering the dismissal of his entire petition without prejudice. This is exactly what a district court is supposed to do. *James v. Pliler,* 269 F.3d 1124, 1125–26 (9th Cir.2001). When Ford did not express a choice, the district court again did exactly what it was supposed to do: It dismissed Ford's mixed petition without prejudice. *Rose v. Lundy,* 455 U.S. 509,

---

have cited to these cases as examples of conduct by attorneys that may justify equitable tolling under AEDPA. *See, e.g., Fahy,* 240 F.3d at 244; *Plowden,* 78 F.Supp.2d at 119.

Similarly, a number of courts, including this court, have held that a client who demonstrates gross negligence on the part of his attorney has established the requisite "extraordinary circumstances" to set aside a default judgment under Federal Rule of 60(b)(6). *See, e.g., Community Dental v. Tani,* 282 F.3d 1164, 1169 (9th Cir.2002); *Boughner v. Secretary of Health, Educ. & Welfare,* 572 F.2d 976, 978 (3d Cir.1978); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 195 (6th Cir.1986); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234, 235 (D.C.Cir.1964).

21. With respect to the two ineffective assistance of counsel claims raised for the first time in Ford's second Loguercio petition, we affirm the district court's dismissal of the claims as time-barred. Ford has presented no reason why those two claims could not have been presented along with the others set forth in his initial petition, or why the purported absence of AEDPA materials from the library would have prevented him from filing the ineffective assistance of counsel claims but not the others. Our decision, of course, does not preclude the district court on remand from entertaining a motion for reconsideration of its decision should Ford make a sufficient showing as to why the ineffectiveness claims were not raised in the initial petition.

510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *James v. Pliler,* 269 F.3d at 1125.

Ford never appealed the dismissal of that petition. (He still hasn't.) What he did instead was go back to state court and exhaust his remaining claims. He eventually returned to federal court and filed the new petitions that are the subject of this appeal. By that time, the statute of limitations had run and the petitions were dismissed as time-barred.

This was precisely the situation we upheld in *Green v. White,* 223 F.3d 1001 (9th Cir.2000). Green's first, timely petition was dismissed without prejudice "apparently because Green had not exhausted his state remedies as to some claims." *Id.* at 1002. After exhausting his state remedies, Green returned to federal court. Like Ford, his claims had become time-barred. We held:

> Green obtained a voluntary dismissal of his earlier habeas petition in order to exhaust his state remedies. A second habeas petition does not relate back to a first habeas petition when the first habeas petition was dismissed for failure to exhaust state remedies. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1148 (9th Cir.2000). When the present petition was filed, there was no pending petition to which the new "petition could relate back or amend." *Henry v. Lungren,* 164 F.3d 1240, 1241 (9th Cir.1999). Therefore, Green's present petition does not relate back to his earlier petition that was dismissed.

*Id.* at 1003.

Because *Green* is identical to the present case in all material respects, the majority is forced to concoct a way around it. It does so by holding that *Green* does not apply if a mixed petition was "improperly dismissed." The majority then posits that the mixed petitions in present case *were* improperly dismissed because the district court did not warn petitioner that if he re-

files, the statute of limitations might return to bite him.

There are several things wrong with this. In the first place, the facts of this case are exactly like *Green.* The district court in the present case dismissed Ford's mixed petition in the same manner as the district court in Green's case dismissed his. The majority says that Green "accepted" the dismissal without prejudice while Ford did not. This is simply untrue. After their mixed petitions were dismissed, Ford and Green did exactly the same thing— they both headed back to state court without a peep. Ford did not appeal or otherwise complain about the dismissal of his mixed petitions any more than Green did. Ford did not even mention the district judge's failure to advise about the statute of limitations in *this* appeal until after argument, when *we* sua sponte called for additional briefing about the dismissal of the original mixed petitions. It is just flat wrong to say that Green accepted the dismissal without prejudice and that Ford did not.

The majority makes much of the point that when the district court dismissed Green's petition, Green still had eleven months of the statute of limitations left to run, while Ford's time had already expired. Therefore, says the majority, the dismissal of Ford's petition without prejudice was tantamount to a dismissal with prejudice. This argument fails to take account of the fact that the district judge will almost never be able to tell, solely from the face of the petition, that the statute of limitations has expired. The calculation of the limitations deadline requires the examination of documents that rarely, if ever, accompany the petition. There is nothing to show that Ford's petition was any different than the usual.

Dismissal without prejudice was not the equivalent of a dismissal with prejudice.

Ford was perfectly free to re-file. If thereafter, the statute of limitations had been raised as an affirmative defense, Ford then would have been entitled to assert whatever factual, statutory, and equitable defenses to the statute of limitations he might have had. And if the statute of limitations had not been raised, it would have been waived.

More troubling is the new rule the majority enacts today. Boldly going where no court has gone before, the majority holds that the district court, when complying with *James v. Pliler*, must incorporate a warning about the statute of limitations. Otherwise, says the majority, the dismissal is "improper." *James v. Pliler* does not require that, nor does any other case involving a routine mixed petition.

It is one thing to construe a pro se petitioner's pleadings liberally, and to require the district court to explain its reasons for dismissing a complaint. It is quite another thing to require the district court judge to act as petitioner's legal advisor. Numerous factors can affect a petitioner's decision to delete unexhausted claims and proceed with an amended petition, rather than accept dismissal without prejudice so that unexhausted claims can be pursued in state court. For example, the meritoriousness of the unexhausted claims is an extremely important factor; so is the fact that the failure-to-exhaust might foreclose those claims forever. The availability of key witnesses is another factor. The statute of limitations is only one element in the equation, and a fact-intensive one at that. Leaving aside the question of the proper role of the court as a neutral arbiter, the district court simply is in no position to identify all of the considerations that pertain. I respectfully suggest that it is the office of the court to fairly and impartially decide the case before it, not to act as the petitioner's paralegal.

The majority places great reliance on the Second Circuit's decision in *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001), but even that case does not hold that it is error to dismiss a mixed petition without prejudice unless the petitioner is informed about the statute of limitations. In *Zarvela*, the Second Circuit held that a district judge has the discretion either to dismiss a mixed petition in its entirety, or to dismiss only the unexhausted claims and then stay the petition, conditioned on petitioner's prompt exhaustion and his prompt return to federal court. *Id.* at 376–77. The district judge allowed a previously withdrawn petition to be "reopened" and therefore, Zarvela's subsequent petition could relate back to the reopened petition which was then extant. *Id.* at 377. Like *James v. Pliler*, Zarvela says that a district court faced with a mixed petition should advise a petitioner that his options are either to proceed with only the exhausted claims, or to return to state court. The most that *Zarvela* says about the statute of limitations is that it might be "useful" for the district court to alert a petitioner to the AEDPA statute of limitations. *Id.* at 382. This is a far cry from what the majority holds today.

The majority's reliance on *Valerio v. Crawford*, 306 F.3d 742 (9th Cir.2002) (en banc) is likewise misplaced. *Valerio* involved highly unusual procedural circumstances of nearly Talmudic complexity, circumstances too convoluted to recount here. But in a nutshell, this court itself created a mixed petition for the petitioner by reinstating, on appeal, new unexhausted claims that had been dismissed by the district court for abuse of the writ. In a portion of the opinion entitled, "Procedure on Remand," the court sought to bring some order to the chaos by giving the district court detailed instructions on how to proceed from that point on, including the direction to inform Valerio of a possible

time-bar in the event that the district court were to decline to follow the stay-and-abeyance procedure on remand. In no way, shape or form can *Valerio* be read to require *Miranda*-like warnings about the statute of limitations in the garden variety mixed-petition case.

The majority's reliance on *Kelly v. Small*, 315 F.3d 1063 (9th Cir.2003), is simply bizarre. The amended *Kelly* opinion was filed after the original opinion in this case (*Ford*) and relies on the original *Ford* opinion for support. *Id.* at 1070–71. Now, in *its* amended opinion, the majority in *this* case (*Ford*) relies on *Kelly*, which in turn relies on *Ford.* The wacky circularity of all of this does not change the fact that it was the *Ford* majority in *this* case that originally cooked up the rule on which the *Kelly* court relied, and with which I respectfully disagree for the reasons I've given.

Finally, in footnote 15, my colleagues advise that, "Although we need not reach the question here, Ford would also be entitled to relief under equitable tolling principles." The majority then goes on to explain why, in its view, Ford *is* entitled to equitable tolling, and finally, in apparent recognition that the issue is not before the court, ends up by saying, "However, because we grant Ford relief on statutory grounds, we do not resolve any equitable tolling claim here." The majority's yearning to resolve Ford's supposed entitlement to equitable tolling is as puzzling as its denial that it is doing that very thing.

The essence of the majority's analysis of the equitable tolling issue it "need not reach" (but does anyway) is its view that Ford was "misled" by the district court's faithful compliance with the procedure set out in *James v. Pliler* and *Rose v. Lundy.* Equitable tolling requires that "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty,* 187 F.3d 1104,

1107 (9th Cir.1999) (quotations omitted). There were no extraordinary circumstances here. That the district court proceeded exactly as instructed in *James v. Pliler* is not an extraordinary circumstance. I do not share the majority's view that the district court "misled" Ford by following our precedent and the Supreme Court's mandate in *Rose v. Lundy.*

Ford did not raise equitable tolling in the district court. In fact, he hasn't even raised it in this appeal, not even after we invited supplemental briefing. That alone is reason to keep our mitts off equitable tolling. *Jiminez v. Rice,* 276 F.3d 478, 481–82 (9th Cir.2001).

Because the district court correctly dismissed the second petitions as time-barred, I would affirm, and therefore respectfully dissent.