**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY L. HARRIS,
　　　　　*Petitioner-Appellant,*

v.

SANDRA CARTER, Superintendent,
　　　　　*Respondent-Appellee.*

No. 06-35313

D.C. No.
CV-05-00885-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
January 11, 2008—Seattle, Washington

Filed February 8, 2008

Before: Robert R. Beezer, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Beezer

## COUNSEL

David Zuckerman (argued), Sheryl Gordon McCloud (briefed), Seattle, Washington, for the petitioner-appellant.

Gregory J. Rosen, Olympia, Washington, Assistant Attorney General, Criminal Justice Division, for the respondent-appellee.

## OPINION

BEEZER, Circuit Judge:

Jerry Harris ("Harris") appeals the district court's order dismissing Harris' 28 U.S.C. § 2254 petition for a writ of habeas

corpus as time-barred and concluding that Harris is not entitled to equitable tolling. Harris argues that he is entitled to equitable tolling because he relied on our precedent. We were subsequently overruled by the Supreme Court in a decision that holds that untimely state habeas corpus petitions do not toll the federal statute of limitations for filing a federal petition. Harris' federal habeas petition, which would have been timely under our existing precedent, became time-barred when the Supreme Court decided *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Because we hold that Harris is entitled to equitable tolling, we reverse the judgment of the district court dismissing Harris' petition as untimely and remand to permit the district court to consider the merits of Harris' petition.

# I

On October 21, 1995, Rene Vivas ("Vivas") was shot and killed outside Murdock's Restaurant and Bar in Ferndale, Washington. A Washington Superior Court jury returned a guilty verdict against Harris on a charge of aggravated first degree murder for his role in Vivas' death. The trial court sentenced Harris to life in prison without parole. The Washington Court of Appeals affirmed Harris' conviction. The Supreme Court of Washington denied Harris' petition for review. Harris' conviction became final on May 29, 2000, which was 90 days after the Washington Supreme Court denied Harris' petition for review on direct appeal.[1]

Harris filed three successive personal restraint petitions ("PRP") in the Washington courts. On February 20, 2001, 267 days after his conviction became final, Harris filed his first

---

[1]A judgment becomes final for purposes of 28 U.S.C. § 2244(d) when the period for filing a petition for certiorari in the U.S. Supreme Court expires. *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005). Petitions for certiorari must be filed in the U.S. Supreme Court within 90 days after the supreme court of the state in which the prisoner was convicted issues its opinion or denies review. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

PRP in the Washington Court of Appeals. On August 25, 2003, the Washington Court of Appeals affirmed the conviction. On December 8, 2003, the Commissioner of the Supreme Court of Washington ("Commissioner") entered a ruling denying review.[2] On February 4, 2004, the Supreme Court of Washington denied Harris' petition to modify the Commissioner's ruling.

Harris filed his second PRP 29 days later, on March 4, 2004. On July 27, 2004, the Commissioner entered a ruling dismissing Harris' petition as untimely because it contained some untimely claims. On October 5, 2004, the Supreme Court of Washington denied Harris' petition to modify the Commissioner's ruling.

Harris filed his third PRP six days later, on October 11, 2004. On March 14, 2005, the Commissioner dismissed Harris' petition as untimely. On June 1, 2005, the Supreme Court of Washington denied Harris' petition to modify the Commissioner's ruling.

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Harris had one year from the date his conviction became final to file a habeas corpus petition in federal court. 28 U.S.C. § 2244(d)(1). AEDPA tolls the one-year limitations period while a "properly filed application" for post-conviction review is pending in state court. 28 U.S.C. § 2244(d)(2).

---

[2]The Commissioner is a staff member of the Supreme Court of Washington, and is appointed by the court. The Commissioner screens petitions for review to the court, and has authority to issue rulings denying review. *See* Wash. R. App. P. 1.1(f); Wash. Sup. Ct. Admin. R. 15(c). If the Commissioner denies a petition for review, the petitioner may file a motion to modify the Commissioner's ruling. In such cases, the court will examine the matter and will either grant or deny the motion to modify.

The U.S. Supreme Court holds that untimely state post-conviction petitions are not "properly filed" under AEDPA, and do not toll AEDPA's statute of limitations. *Pace*, 544 U.S. at 417. In Harris' case, AEDPA's statute of limitations ran continuously from February 4, 2004 until he filed his federal habeas petition over 15 months later. Harris' federal habeas petition was time-barred under the rule announced in *Pace*.

Until the Supreme Court decided *Pace* on April 27, 2005, our circuit law was different. Our precedent stated that an untimely Washington State post-conviction petition was "properly filed" for purposes of § 2244(d) and tolled the statute of limitations while the petition was pending in the state courts. *Dictado v. Ducharme*, 244 F.3d 724, 727-28 (9th Cir. 2001). Under our rule in *Dictado*, AEDPA's clock was stopped while Harris' second and third PRPs were pending. Under *Dictado*, Harris would have had 63 days after the Supreme Court of Washington's denial of his third PRP within which to file his federal habeas petition.[3]

On May 11, 2005, Harris filed his federal habeas corpus petition in the U.S. District Court for the Western District of Washington. Appellee Sandra Carter (the "State") filed a motion to dismiss arguing that Harris' federal habeas petition was time-barred under *Pace*. Harris did not contest that his petition would be time-barred under a strict application of *Pace*, but argued that he was entitled to equitable tolling of the statute of limitations because he relied on controlling

---

[3]We hold that the statute of limitations is tolled for "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104 (2000) (internal quotations and citation omitted). Under the rules established in *Nino* and *Dictado*, Harris' PRPs were pending, and the statute of limitations was tolled, until the Washington Supreme Court denied Harris' petition to modify the Commissioner's ruling for each PRP.

Ninth Circuit precedent in waiting to file his federal habeas petition. The magistrate judge issued a report and recommendation concluding that the petition was time-barred and that Harris was not entitled to equitable tolling. The district court adopted the report and recommendation and dismissed Harris' petition. Harris timely appeals.

### III

We review de novo the denial of a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir. 2001). The facts underlying this claim for tolling of AEDPA's limitations period are undisputed. We review de novo whether the statute of limitations should be tolled. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1025 (9th Cir. 2005).

### IV

The sole question presented is whether we should strictly apply the Supreme Court's rule announced in *Pace* on a retroactive basis, or whether we should grant equitable tolling given Harris' reliance on our controlling precedent in *Dictado*. We hold that equitable tolling should be granted under these circumstances.

### A

The parties first dispute which standard we should apply to determine whether equitable tolling is justified in habeas cases such as this one.[4] The State refers to our observation that equitable tolling is available only when "extraordinary circumstances beyond a prisoner's control make it impossible

---

[4]Although the Supreme Court has never explicitly decided whether § 2244(d) allows for equitable tolling, *see Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007), we hold that it does, *see, e.g.*, *Espinoza-Matthews*, 432 F.3d at 1026.

to file a petition on time."[5] *See, e.g.*, *Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003). Harris argues that the Supreme Court articulated a new and less strict standard in *Pace*. In *Pace*, the Supreme Court says that a habeas petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance has stood in his way." *Pace*, 544 U.S. at 418; *see also Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007).

Our cases since *Pace* have not settled on a consistent standard. *Compare, e.g.*, *Raspberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (citing *Pace* and applying its standard), *with Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (applying the standard articulated in *Stillman*). Our only case to address the issue noted the possibility that *Pace* "lowered the bar somewhat" compared with our previous standard. *See Espinoza-Matthews*, 432 F.3d at 1026 n.5. The case does not decide whether a substantive difference exists between the two standards. *See id.*

We need not decide whether the *Pace* standard differs from our previous standard because, as discussed below, the arguable distinctions between the two standards are not at issue in this case.

## B

The State argues that Harris does not meet our standard for equitable tolling set forth above. The State says that Harris

---

[5]Despite the unequivocal "impossibility" language in our standard, we have not insisted that it be literally impossible for a petitioner to file a federal habeas petition on time as a condition of granting equitable tolling. We have granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition, but a prisoner would have likely been unable to do so. *See, e.g.*, *Mendoza v. Carey*, 449 F.3d 1065, 1069-71 (9th Cir. 2006) (holding that Spanish-speaking petitioner who did not have access to Spanish language legal materials alleged facts that, if true, could entitle him to equitable tolling).

failed to file diligently his federal habeas petition in a manner that ensured it would be timely. Harris made a deliberate, tactical choice, the State argues, in waiting to file his federal habeas petition and pursuing post-conviction relief in the state courts. Nothing beyond Harris' own tactical decision, the State further argues, prevented Harris from filing a timely federal habeas petition. The State urges that Harris should be held responsible for the consequences of his own litigation choices, and should not be "rescue[d]" from having made a poor tactical decision.

[1] The State's argument ignores the rationale behind the principle of equitable tolling that formed the basis for the standards articulated in *Pace* and *Stillman*. We have stated that the purpose of the equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004). Equitable tolling also serves to "prevent the unjust technical forfeiture of causes of action." *Id*. Equitable tolling is typically granted when litigants are unable to file timely petitions as a result of external circumstances beyond their direct control. *See Stillman*, 319 F.3d at 1202. Equitable tolling is typically denied in cases where a litigant's own mistake clearly contributed to his predicament. *See Lawrence*, 127 S. Ct. at 1085.

[2] The fact that Harris *could* have filed a timely federal habeas petition at a certain point in time is not dispositive. The critical fact here is that Harris relied in good faith on then-binding circuit precedent in making his tactical decision to delay filing a federal habeas petition. Harris' failure to file a timely petition is not the result of oversight, miscalculation or negligence on his part, all of which would preclude the application of equitable tolling. *See Lawrence*, 127 S. Ct. at 1085. Harris was undoubtedly aware of when AEDPA's statute of limitations would expire under our rule in *Dictado*. Harris presumably chose his tactical strategy precisely *because* he believed that, under *Dictado*, he could pursue

relief in state courts without jeopardizing his ability to file a federal habeas petition.

**[3]** Harris' circumstances justify equitable tolling under both our circuit's standard and the *Pace* standard. Harris diligently pursued his rights. He filed successive petitions for state post-conviction relief while ensuring that enough time would remain to file a federal habeas petition under the then-existing *Dictado* rule. The Supreme Court's overruling of the *Dictado* rule made it impossible for Harris to file a timely petition. Harris' petition became time-barred the moment that *Pace* was decided. Finally, Harris had no control over the operative fact that caused his petition to become untimely— the Supreme Court's decision in *Pace*. These are precisely the circumstances in which equitable principles justify tolling of the statute of limitations.

### C

Harris argues that Supreme Court case law counsels in favor of granting equitable tolling in this case. In *Pliler v. Ford*, 542 U.S. 225 (2004), the Supreme Court reversed our holding that district courts were required to provide habeas petitioners with a specific warning that their case could become time-barred. *Id.* at 231. The Supreme Court remanded the case to us for consideration of equitable tolling given our "concern that respondent had been affirmatively misled" by the district court. *Id.* at 234. The unstated implication in the Supreme Court's opinion is that equitable tolling would likely be appropriate in at least some situations where a petitioner is affirmatively misled by a district court. *See id.*; *see also id.* at 235 (O'Connor, J., concurring) ("Nevertheless, if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate."); *Brambles v. Duncan*, 412 F.3d 1066, 1070 (9th Cir. 2005) ("Consistent with the Court's decision in *Pliler*, the sole issue before us is whether [petitioner] was affirmatively misled by the district court's instructions.").

**[4]** *Pliler* does not compel us to grant equitable tolling in this case. The Supreme Court's decision to remand for consideration of equitable tolling nonetheless supports our conclusion that equitable relief is justified under these circumstances. In *Pliler*, the Supreme Court remanded because of the possibility that a petitioner relied upon, and was misled by, a district court's representations. Harris' request for equitable tolling arises from his reliance on our holding that was subsequently declared to be legally erroneous. Our holding misled Harris into believing that he had ample time to file his federal habeas petition, whereas in reality time was running out. Although Harris was misled by reliance on our precedent rather than by a statement of the court addressed directly to him, the consequences were the same. Harris' petition became time-barred.

## D

Harris argues that authority from other federal courts support his request for equitable tolling. We agree. The Tenth Circuit has granted equitable tolling on facts similar to those here. *See York v. Galetka*, 314 F.3d 522 (10th Cir. 2003). In *York*, the district court had previously dismissed the petitioner's second federal habeas petition for failure to exhaust all claims. *Id*. at 526. The petitioner did not immediately file a third federal petition raising only the exhausted claims. *Id*. Instead, petitioner waited several months, attempting to exhaust his remaining state claims before filing another federal habeas petition. *Id*. At the time, the law was unclear whether the pendency of a federal habeas petition tolled AEDPA's limitations period. *See id*. at 528. Petitioner's third federal petition would be timely only if the law was resolved in his favor.

*After* petitioner filed his third habeas petition, the Tenth Circuit resolved the law in petitioner's favor. The Tenth Circuit held that a pending federal habeas petition did toll the statute of limitations. *Id.*; *see Petrick v. Martin*, 236 F.3d 624,

629 (10th Cir. 2001). The Supreme Court overruled the Tenth Circuit in *Duncan v. Walker*, 533 U.S. 167 (2001). As a result, petitioner's third federal habeas petition became untimely.

The Tenth Circuit held that petitioner was entitled to equitable tolling.[6] The Tenth Circuit held that equitable tolling was justified because "York diligently pursued his claims[,] . . . the law in this circuit was unsettled on the issue [whether a pending federal habeas petition tolled the statute of limitations] and the statute is ambiguous." *Id*. at 528.[7]

**[5]** Like the petitioner in *York*, Harris diligently pursued his habeas claims. In *York*, as here, the petitioner's habeas petition became untimely only after the Supreme Court later altered the law. The facts here present an even more compelling argument for equitable tolling than those in *York*. Harris relied on controlling circuit precedent, rather than an ambiguity in the law, in making his strategic decision to delay his federal petition while pursuing relief in the state courts. The Supreme Court's subsequent overruling of our controlling precedent constitutes the type of extraordinary circumstances that justifies a grant of equitable tolling.[8]

---

[6]The Tenth Circuit employed a "rare and exceptional circumstances" standard similar to the standards articulated in *Pace* and *Stillman* in determining that equitable tolling was justified. *York*, 314 F.3d at 527.

[7]We also recognize that a district court has granted equitable tolling to a petitioner on facts substantively identical to those here. *See De Jesus v. Miller*, 215 F. Supp. 2d 410, 412-13 (S.D.N.Y. 2002).

[8]We do not decide the question specifically answered by the Tenth Circuit in *York*—whether equitable tolling should be granted when a petitioner waits to file a habeas petition despite an ambiguity in the law, and that ambiguity is later resolved by a court in a manner that results in the petition being untimely. The argument for equitable tolling in the situation encountered in *York* would be less persuasive than the argument for equitable tolling that Harris presents here.

## V

**[6]** Equitable principles dictate that we toll AEDPA's statute of limitations in the rare case where a petitioner relies on our legally erroneous holding in determining when to file a federal habeas petition. We hold that Harris is entitled to equitable tolling of AEDPA's one-year statute of limitations. Consequently, Harris' federal habeas petition is timely. We reverse the judgment of the district court dismissing Harris' petition as untimely and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**