**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD HERMAN FORD,
            *Petitioner-Appellee,*

v.

CHERYL PLILER, Warden,
            *Respondent-Appellant.*

No. 06-56092

D.C. No.
CV-98-02557-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
March 9, 2009—Pasadena, California

Filed December 30, 2009

Before: Michael Daly Hawkins, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by Judge Berzon

16811

## COUNSEL

Lisa M. Bassis, Beverly Hills, California, for the petitioner.

Paul M. Roadarmel, Jr., supervising Deputy Attorney General, Los Angeles, California, for the respondent.

## OPINION

CLIFTON, Circuit Judge:

Petitioner Richard Herman Ford is currently a prisoner in state custody. He has challenged his confinement by filing two habeas corpus petitions in federal district court. Those petitions were originally dismissed by the district court as untimely based on the one-year federal statute of limitations

under 28 U.S.C. § 2244(d)(1). This court reversed the dismissal, in part, in a decision that held that district courts must advise petitioners regarding certain aspects of dealing with the statute of limitations before dismissing habeas petitions. *Ford v. Hubbard*, 330 F.3d 1086, 1099 (9th Cir. 2003). The Supreme Court disagreed with and vacated our decision, holding that the advisements were not required. *Pliler v. Ford*, 542 U.S. 225 (2004). The Court remanded the case for further proceedings, in light of this court's "concern that [Ford] had been affirmatively misled." *Id.* at 234.

On remand, the district court determined that it had affirmatively misled Ford and thus the limitations period should be equitably tolled. The state successfully sought leave to appeal that determination, and we reverse it as inconsistent with the decision of the Supreme Court. Because Ford has not established that the limitations period should be equitably tolled, his federal habeas petitions must be dismissed as untimely.

## I.  Background

On April 19, 1997, Ford signed and delivered to prison authorities two *pro se* federal habeas corpus petitions. The first petition related to Ford's California state court convictions for, among other things, conspiring to murder John Loguercio and attempting to murder Loguercio's wife. The second related to his convictions for first-degree murder and conspiracy to commit the murder of Thomas Weed.[1]

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a "1-year period of limitation" for "application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Because Ford's convictions in both cases

---

[1]For more detail concerning the background of this case, see our previous decision, *Ford*, 330 F.3d at 1094-97.

became final prior to the enactment of AEDPA, his one-year period for filing a habeas petition in federal court began on AEDPA's effective date of April 24, 1996. *Ford*, 330 F.3d at 1097; *see Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001). Ford filed his petitions on April 19, 1997, making both petitions timely, but with only five days to spare. *Pliler*, 542 U.S. at 228.

Although some of the claims in each of Ford's petitions had previously been raised in state court, other claims in each petition had not been so exhausted. Recognizing that the inclusion of unexhausted claims prevented the district court from entertaining his petitions in their current state, *see Rose v. Lundy*, 455 U.S. 509, 522 (1982), Ford filed at the same time motions to stay proceedings on his petitions. He hoped that by doing so he could return to state court to exhaust his unexhausted claims and then refile in federal court and have all of his claims heard on the merits.

The district court did not grant those motions to stay. The magistrate judge assigned to the case explained that the court only had power to stay proceedings for habeas petitions containing exclusively exhausted claims. He asked Ford to select a course of action from among three alternatives. Those options were: (1) to dismiss his petitions without prejudice and then, after exhausting in state court the previously unexhausted claims, to refile in federal court; (2) to dismiss the unexhausted claims and present the federal court with only his exhausted claims; or (3) to demonstrate that all of his claims had already been exhausted in state court. The magistrate judge also told Ford that if he failed to choose one of these options, his petitions would be dismissed without prejudice.

Ford chose to dismiss the Loguercio petition without prejudice. He failed to respond with respect to the Weed petition. As a result, the district court dismissed both petitions without prejudice.

Shortly afterwards, seeking to exhaust all his claims, Ford filed habeas corpus petitions for both cases in the California Supreme Court. Each petition was subsequently denied. Ford then refiled both of his federal habeas petitions on April 1, 1998. By that time, however, the one-year limitations period for filing a habeas petition in federal court had long since run. Indeed, it had already expired by the time the district court identified for Ford the three options explained above. Ford's petitions were thus untimely, and the district court dismissed them with prejudice.

Ford appealed. As indicated above and as will be discussed more fully below, this court affirmed in part, vacated in part, and remanded with instructions, with one judge dissenting. The Supreme Court disagreed with our reasoning, however, vacated our decision, and remanded for further proceedings on the question of whether Ford had been "affirmatively misled" by the district court.

We, in turn, remanded to the district court to conduct such further proceedings. Because of another issue previously raised by Ford but not reached by us on the first appeal, we also asked the district court to determine "whether [Ford]'s attorney failed or refused to provide [him] with parts of his legal files . . . and whether the attorney's conduct constitutes an 'extraordinary circumstance' that would warrant equitable tolling."

In the district court, the case was assigned to the same magistrate judge who had been responsible for the case previously and who had identified the three options for Ford. In his Report and Recommendation, that magistrate judge found that Ford had in fact been affirmatively misled. The Report discussed the events surrounding Ford's initial filings and the dismissal of those petitions "without prejudice" and noted that Ford, by his filing of the motions to stay, "made it clear that he sought to preserve his ability to have all of his claims con-

sidered on the merits." It concluded that the court had not at that time responded properly:

> In the context created by petitioner's requests to stay his first petitions, the Magistrate Judge's denial of the stays, citing the *Rose* requirement that the court dismiss "mixed" petitions but not mentioning the proper method for accomplishing a stay-and-abeyance, contributed to petitioner's mistaken belief that the court's option of dismissing his petitions *without prejudice* would accomplish what he was requesting. Notwithstanding the Supreme Court's subsequent holding that district courts are not required to volunteer stay-and-abeyance advice, in the circumstances of the instant case, petitioner was affirmatively misled because the court's omission of an explanation of the stay-and-abeyance procedure came in response to petitioner's requests to stay his petitions.

The Report also noted that the court's previous order "made no mention of the AEDPA statute of limitations as one of the factors petitioner should consider in choosing which option to follow." In particular, the court's order at the time "did not inform petitioner that the AEDPA statute of limitations would apply to his second federal petitions, further cementing petitioner's mistaken belief that dismissal *without prejudice* was the court's suggested method of permitting him to both exhaust his unexhausted claims, and to comply with, or more specifically, to toll, AEDPA's statute of limitations."

The Report concluded:

> By failing to specifically address this concern, and simply proceeding to issue [a Report and Recommendation] dismissing *without prejudice* (even though this dismissal would permanently bar petitioner from having his exhausted claims considered

on their merits in federal court, an effect contrary to petitioner's stated desire), it affirmatively (though unintentionally) misled petitioner.

Since Ford had reasonably relied, to his detriment, on the court's affirmatively misleading instructions, the Report recommended that the AEDPA one-year limitations period should be equitably tolled and that Ford should be permitted to pursue the exhausted claims in his petitions.

In addition, per our instructions, the magistrate judge discussed Ford's legal file and whether this might also provide Ford a basis for equitable tolling. The magistrate judge determined that Ford was not entitled to equitable tolling on that basis because the record revealed that Ford was aware of the factual basis of his claims well before he obtained his legal materials. As a result, "even assuming, *arguendo*, that state appellate counsel's conduct in failing to provide [Ford] with [his complete file] was egregious," the Report found no basis on which to find that the attorney's conduct had made it impossible for Ford to file a timely federal habeas petition.

The district court concurred and adopted the magistrate judge's conclusions. The state sought permission to take an immediate appeal, and the district court certified the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This court granted permission to appeal.

## II.  Discussion

Ford contends that the limitations period for filing his habeas petitions should be tolled for two separate reasons: because he was affirmatively misled by the district court and because he could not obtain his legal file and as a result was unable to file his petitions on a timely basis. Both issues are now before us, and we address each in turn. Whether the statute of limitations should be equitably tolled is a question we

review *de novo*. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009).

### A.    *Ford was not affirmatively misled.*

**[1]** Our decision on the primary issue in this case is controlled by the Supreme Court's opinion in this same case. The district court gave Ford accurate instruction before dismissing his mixed habeas petitions without prejudice. *Pliler* does not allow us to require anything more. The Court made clear that to prevail Ford had to demonstrate that he "had been affirmatively misled quite apart from the District Court's failure to give the two warnings" required in this court's previous decision. *Pliler*, 542 U.S. at 234. The basis for the district court's conclusion that Ford was "affirmatively misled" is not, in substance, different from the basis of our prior decision, which was rejected by the Supreme Court.

The two warnings referenced by the Supreme Court were described in our first decision in this case, when we held that

> the district court erred by failing to inform Ford (1) that it could consider his stay motions only if he opted to amend the petitions and dismiss the then-unexhausted claims, and (2) that his federal claims would be time-barred, absent cause for equitable tolling, upon his return to federal court if he opted to dismiss the petitions "without prejudice" and return to state court to exhaust all of his claims.

*Ford*, 330 F.3d at 1093.

More specifically, we first determined that "the district court was obligated to inform [Ford] of his options with respect to his mixed habeas petitions," *i.e.*, how to correctly acquire a stay, *id.* at 1099, reasoning that by not doing so the court "deprived Ford of a fair and informed opportunity to have his stay motions heard," *id.* at 1100. Second, we held

that "[t]he district court further erred when it failed to inform Ford that . . . he would be time-barred under AEDPA . . . if he either failed to amend his petitions or chose the option of dismissing them . . . ." *Id.* We noted that the court "defini- tively . . . misled him by informing him that if he opted to dis- miss the petitions . . ., the dismissal would be *without prejudice*," and explained that the district court should have told Ford that because AEDPA's statute of limitations had expired, "the dismissal, although ostensibly without prejudice, would actually result in a dismissal *with prejudice* unless he could establish that . . . he was entitled to equitable tolling." *Id.* at 1100-01. We concluded by stating that the district court misled Ford, depriving him of the opportunity to make a meaningful choice, and held that this amounted to prejudicial error. *Id.* at 1101-02. In sum, we required district courts to give two specific warnings before dismissing habeas petitions such as Ford's.

**[2]** The Supreme Court reversed, holding "that federal dis- trict judges are not required to give *pro se* litigants these two warnings." *Pliler*, 542 U.S. at 231. The Court reasoned that "[e]xplaining the details of federal habeas procedure and cal- culating statutes of limitations are tasks normally and properly performed by trained counsel" and held that "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* liti- gants." *Id.* To decide otherwise, the Court said, "would under- mine district judges' role as impartial decisionmakers" and risk further confusion for petitioners. *Id.* at 231-32.

As described above, on remand the district court concluded that it had affirmatively misled Ford, holding that the court should have provided him "an explanation of the stay-and- abeyance procedure" and should have informed him "that the AEDPA statute of limitations would apply to his second fed- eral petitions." But those are the very same instructions that the Supreme Court held that district courts were not required to give. *Id.* at 231, 234. The Court was explicit in holding that the door was open to Ford only for a claim that he had been

affirmatively misled "quite apart from the District Court's failure to give the two warnings." *Id.* at 234.

**[3]** The fact that Ford's actions evidenced a desire to have his claims heard cannot change this result. We agree that Ford wanted to have his claims heard and resolved on the merits. But all of the facts cited in the Report and Recommendation adopted by the district court were part of the record of this case and known to the Supreme Court when it rendered its decision. The *Pliler* decision recited as fact that Ford "filed motions to stay . . . so that he could return to state court to exhaust the unexhausted claims." *Id.* at 228. When Ford dismissed his first federal petitions, nominally without prejudice, the limitations period for a federal filing had already expired, a point we highlighted in our previous decision. *Ford*, 330 F.3d at 1100. It was obvious that Ford did not understand that dismissing the federal petitions would prevent him from returning to federal court with any of his claims, or else he never would have selected that alternative. That, however, did not alter the Court's decision in *Pliler*.

More broadly, it can be assumed that all habeas petitioners would prefer not to see their petitions dismissed on statute of limitations grounds and would instead prefer that the court reach the merits, but that is not enough to excuse untimely filings. Nor is it a sufficient basis for us to hold that the district court was required in this case to give the warnings which *Pliler* held district courts are not required to give.

**[4]** *Pliler* does not leave us room to rule otherwise. The Court stated in *Pliler* that "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants." 542 U.S. at 231; *see also Robbins v. Carey*, 481 F.3d 1143, 1148 (9th Cir. 2007) (*"Pliler* extends beyond the giving of two warnings to *pro se* litigants because district courts have no obligation to act as counsel or paralegal to *pro se* litigants and because the Constitution does not require judges to take over chores for a *pro se* defendant that would normally be attended to by

trained counsel as a matter of course." (internal quotation marks, citations, and brackets omitted)). We cannot hold that district judges somehow do have such an obligation simply because it seems clear that a *pro se* petitioner otherwise might not understand the relevant law. This risk of misunderstanding will be present for most, if not all, *pro se* litigants. That exception would swallow the rule.[2]

[5] In order to show that he was affirmatively misled, Ford needed to point to some inaccuracy in the district court's instructions. He has failed to identify any affirmative misstatement. The description of the dismissals of the petitions as "without prejudice" does not represent such a misstatement, because those dismissals were in fact without prejudice, as that term is understood in its legal sense. *See* Black's Law Dictionary 502 (8th ed. 2004) ("A dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period."). We have previously so held. In *Brambles v. Duncan*, 412 F.3d 1066, 1068-70 (9th Cir. 2005), we explained that the court presented "accurate options," one of which was dismissal without prejudice, even though the

---

[2]Any implication in the dissenting opinion that Justice O'Connor's concurring opinion expressed a different view is unfounded. Justice O'Connor joined in the majority. As her concurring opinion explained, she wrote to highlight that "[t]he propriety of the stay-and-abeyance procedure generally is not addressed" in the majority opinion, and that such an approach "is not an idiosyncratic one" but rather had been approved by seven of the eight Circuits to consider it. 542 U.S. at 234. That is not at issue here. What matters for this case is that she expressly agreed with the majority opinion that the district court is not required to calculate whether any time remained on the limitations period for the individual petitioner:

> For the reasons given by the majority, *ante*, at 231-233, it is not incumbent upon a district court to establish whether the statute of limitations has already run before explaining the options available to a habeas petitioner who has filed a mixed petition.

*Id*. at 235.

options were given "twelve days after the AEDPA's one-year statute of limitations had expired."[3]

[6] A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some "extraordinary circumstance[ ] beyond [his] control" caused his late petition, *see, e.g.*, *id.* at 1069 (internal quotation marks omitted), and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone. *Waldron-Ramsey*, 556 F.3d at 1011 ("To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in his way suggests that an external force

---

[3]We are not persuaded that our decision in *Brambles* can be disregarded or distinguished based on the "terseness" of its discussion, as the dissenting opinion, at 16832-33, suggests. The issue there was essentially the same as the issue in this case, and it is plain that the *Brambles* panel understood the issue and spoke to it. That decision concluded that the instructions given to petitioner by the district court, which included the words "without prejudice" even though, as here, the AEDPA one-year limitations period had already run by the time the instructions were given, "were not affirmatively misleading. They presented accurate options available to Brambles." 412 F.3d at 1070. The decision included an additional explanation that underscores the similarity of the issue in that case:

> If anything was misleading, it was what the district court did not tell Brambles — that the dismissal of his first petition would effectively be final unless he could establish that the statute of limitations period was equitably tolled, and that the stay and abey process was available. However, the Supreme Court in *Pliler* admonished district courts against attempting to explain to pro se litigants these federal habeas procedures, stating that attempting to do so might prove to be misleading. *Pliler*, 124 S.Ct. at 2446.

*Id.* at 1070-71.

Nor are we persuaded by the dissenting opinion's citation to decisions by this court that predate the Supreme Court's decision in *Pliler*. Notably, the citation to *Tillema v. Long*, 253 F.3d 494, 504 (9th Cir. 2001), points specifically to a paragraph that also spoke of "why district courts must take special care to advise habeas petitioners of their option to strike unexhausted claims in light of AEDPA." 235 F.3d at 503.

must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's part . . . .") (internal quotation marks and brackets omitted); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("We now . . . hold that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."). A petitioner like Ford must show that the court erred in the instruction it did give him. This was our holding in *Brambles*, *see* 412 F.3d at 1070-71, and Ford has not satisfied that requirement.

**[7]** "As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review . . . ." *Rhines v. Weber*, 544 U.S. 269, 275 (2005). This is the reality of the current state of law, a reality that includes *Pliler*. In this case, the district court gave Ford accurate instruction before dismissing his mixed habeas petitions without prejudice. *Pliler* does not require anything more. While Ford may have been, and likely was, confused about the operation of the statute of limitations, he was not affirmatively misled by the district court. He is not entitled to equitable tolling of the limitations period on that ground.

## B. The missing legal files did not prevent Ford from timely filing.

Also before us is the district court's determination that Ford is not entitled to equitable tolling based on his state appellate counsel's conduct. Ford argues that his attorney did not provide him with "the complete set of his legal papers" until July of 1997 and, therefore, it was impossible for him to have discovered the factual predicate for his newly asserted claims until that time.

**[8]** The problem for Ford is that he never objected to the district court's factual finding that he "was aware of the fac-

tual bases of his . . . claims as early as 1992." As a result, he has waived any challenge to that finding, and we must take it as true. *Robbins*, 481 F.3d at 1146; *United States v. Torf*, 357 F.3d 900, 910 (9th Cir. 2004). This posture makes it quite clear that regardless of when Ford's attorney provided him his complete legal files, his alleged inability to access them cannot be "the cause of his untimeliness" since he did not need the legal materials they contained to file a timely habeas petition. *Bryant v. Ariz. Atty. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (internal quotation marks omitted). As such, the district court was correct in denying Ford equitable tolling. *See id.*

## III.   Conclusion

Ford was not affirmatively misled by the district court. Although it failed to advise him of the likely consequences of his procedural options, the district court accurately presented those options to him. This is all it was required to do. In addition, Ford is not entitled to equitable tolling on the ground that he did not have his legal files because the record shows that he was aware of the factual basis of his claims without them.

Ford's petitions were filed after the limitations period had run. The petitions do not qualify for equitable tolling of the limitations period, so they were untimely and must be dismissed.

**AFFIRMED IN PART; REVERSED IN PART.**

---

BERZON, Circuit Judge, concurring in part and dissenting in part:

I cannot agree with the majority's conclusion in Part II.A that *Pliler v. Ford*, 542 U.S. 225 (2004), forecloses the possibility that Ford was affirmatively misled by the language

"without prejudice." I would instead affirm the district court's finding. I therefore dissent from the majority's holding to the contrary.

## I.

Contrary to the majority's suggestion, the Supreme Court in *Pliler* quite clearly left open the question whether, by spelling out options and describing one as dismissal "without prejudice" in the context of Ford's expressed desire to stay his petitions, the district court affirmatively misled Ford.

The Supreme Court recognized that the Ninth Circuit opinion in the case suggested Ford was "misled . . . by telling him that if he chose the first option, the dismissal would be without prejudice." *Id.* at 229. It then expressly limited its holding to whether the district court should have been affirmatively required to advise Ford (1) that it could consider his motions to stay the mixed petitions only if Ford chose to dismiss the unexhausted claims and (2) that, absent equitable tolling, he would be time-barred *if* he accepted dismissal "without prejudice." *Id.* at 231. After reversing this court as to the need for such advisements, the Court then "remand[ed] the case for further proceedings given the Court of Appeals' concern that [Ford] had been affirmatively misled quite apart from the District Court's failure to give the two warnings." *Id.* at 234. As the use of the "without prejudice" phrase was the only possibly misleading language identified in the majority opinion, it is evident that the express reservation reached the impact of that phrase.

That the Supreme Court did not foreclose the possibility that Ford was misled by the "without prejudice" phrase is confirmed by the concurring and dissenting opinions in *Pliler*. Justice O'Connor, who cast the fifth vote to form the majority, conditioned her concurrence on the possibility that the court on remand could find Ford was affirmatively misled. *Id.* at 235 (O'Connor, J., concurring); *see also id.* at 234 ("I join

the Court's opinion because it is limited to the narrow question whether the notifications crafted by the Ninth Circuit must be given."). As, again, the "without prejudice" phrase was the language identified by the majority opinion as possibly misleading, I read Justice O'Connor's concurrence as dependent upon leaving the question of the impact of that phrase on Ford undecided.

This understanding is confirmed by the other concurrence, that of Justice Stevens, joined by Justice Souter. Justice Stevens wrote that "remanding to the Ninth Circuit to determine the propriety of equitable tolling" was the appropriate judgment, but explicitly agreed with the substance of Justice Ginsburg's dissent. *Id.* at 235 (Stevens, J., concurring). Justice Ginsburg, in turn, expressly stated that it was the description of the dismissal orders as "without prejudice" that, in context, was "highly misleading." *Id.* at 236 (Ginsburg, J., dissenting).

In sum, the Supreme Court in *Pliler* left open the "affirmatively misled" issue, where the only possibly affirmatively misleading language identified in the opinions was the "without prejudice" phrase. There's just no doubt that the issue left open in the next-to-last sentence of the majority opinion in *Pliler v. Ford* was whether the admonition the district court *did* give, using the term dismissal "without prejudice," was misleading.

## II.

Having determined that *Pliler* does not answer the question before us, I would affirm the district court's finding that Ford was affirmatively misled. This finding is deserving of our deference because the district court is most intimately familiar with the facts. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (per curiam) (en banc) (describing the determination of "whether there are grounds for equitable tolling" as "highly fact-dependent").

The district court's determination is, moreover, in line with our case law. We have recognized that a dismissal "without prejudice" is in fact "with prejudice" when it is definite that an individual's petition or claim cannot be successfully refiled because time-barred by the time of the dismissal. *See, e.g.*, *Tillema v. Long*, 253 F.3d 494, 504 (9th Cir. 2001) (noting that when a habeas petition is dismissed after AEDPA's limitation period has ended, "it cannot accurately be said that the dismissal of [the] petition was . . . 'without prejudice' "); *Pension Ben. Guar. Corp. v. Carter & Tillery Enter.*, 133 F.3d 1183, 1187 (9th Cir. 1998) (holding that a district court abused its discretion by dismissing a plaintiff's complaint "without prejudice" rather than staying the proceedings because although "the dismissal was without prejudice, given the statute of limitations [expiration], the dismissal was effectively with prejudice").

For its contrary conclusion that the court's instructions were accurate and therefore could not be misleading, the majority disregards these precedents and instead relies heavily on the Black's Law Dictionary definition of "dismissal without prejudice" as "[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period." Maj. Op. at 16823 (quoting BLACK'S LAW DICTIONARY 502 (8th ed. 2004)). This definition simply cannot bear the weight placed on it.

As I read it, the definition *assumes* that any applicable limitations period has not yet expired when a "dismissal without prejudice" occurs. It makes no sense to speak of "refiling the lawsuit within the applicable limitations period" when the period is over at the time of the dismissal. I very much doubt that Black (or, more probably, his successors) had in mind that anomaly when he fashioned the definition.

My reading is confirmed by Black's separate entry for "without prejudice" as meaning "[w]ithout loss of any rights; in a way that *does not harm or cancel* the legal rights or privi-

leges of a party <dismissed without prejudice>." BLACK'S
LAW DICTIONARY 1632 (emphasis added); *see also* BRYAN A.
GARNER, A DICTIONARY OF MODERN LEGAL USAGE 937 (2d ed.
1995) (defining "without prejudice" as describing "a legal
action—either judicial or among private parties—that *in no
way harms or cancels* the legal rights or privileges of a party"
(emphasis added)). The majority's reading of the definition of
"dismissal without prejudice" cannot be squared with this def-
inition of "without prejudice." Ford's right to have his
exhausted claims heard was, according to the majority, for-
ever lost at the moment of dismissal. *See* Maj. Op. at 16825.
If so, the dismissal was certainly not "without prejudice" as
defined by Black's and by Garner, as the result of the dis-
missal was, emphatically, to "harm or cancel . . . legal rights."
So describing the option of dismissal as "without prejudice"
was not accurate even under ordinary legal usage.

In any event, where a court, as here, gives options to a *pro
se* litigant, reliance on the legal dictionary definition of "with-
out prejudice" should not be determinative of what the litigant
was reasonably led to believe by the court. *Pliler* to some
degree supports this conclusion, because it explains why a
court's affirmative advice to a *pro se* petitioner can be mis-
leading and so should be limited. *See* 542 U.S. at 231-32 (stat-
ing that "to the extent that respondent is concerned with a
district court's potential to mislead *pro se* habeas petitioners,
the warnings respondent advocates run the risk of being mis-
leading themselves").

Moreover, in this instance the magistrate judge must have
known that the limitations period had expired on the
exhausted claims, as the original habeas petitions so informed
him: Ford's original habeas petitions stated that by Ford's
own calculations, the limitations period was about to expire
when the petitions were filed. *See* Loguercio petition dated
April 19, 1997 ("Petitioner advises court that due to haste to
meet deadline imposed by Public Law 104-132-Apr. 24 1996,
several additional meritorious issues beyond what has been

stated in this motion may exist."); Weed petition dated April 19, 1997 ("Petitioner advises court that due to haste to meet the April 23, 1997, statute of limitations deadline for federal habeas corpus petitioners, petitioner may have missed additional issues beyond what is mentioned in this motion."). The magistrate judge was therefore on notice that dismissal "without prejudice" of the exhausted claims after April 23, 1997, would effectively be "with prejudice."

Even if that were not so, our case law approves of equitable tolling based on affirmatively misleading actions not the result of *knowing* misinformation. For example, *Harris v. Carter*, 515 F.3d 1051, 1056 (9th Cir. 2008), held that a habeas petitioner was entitled to equitable tolling where he "was misled by reliance on our precedent rather than by a statement of the court addressed directly to him [because] the consequences [of both] were the same." There was, of course, no allegation that the Court had issued an incorrect prior legal decision knowing that the opinion was not correct. *Harris* explicitly acknowledged *Pliler*, which it said implied "equitable tolling would likely be appropriate in at least some situations where a petitioner is affirmatively misled by a district court." *Id. See also Prieto v. Quarterman*, 456 F.3d 511, 516 (5th Cir. 2006) (holding that equitable tolling was appropriate where the district court granted petitioner an "extension" to file his habeas petition that exceeded the one-year AEDPA deadline and noting that "[o]rders such as these have the effect of *unintentionally misleading* the prisoner, and . . . may warrant equitable tolling" (brackets and quotation marks omitted) (emphasis added)); *Spottsville v. Terry*, 476 F.3d 1241, 1245, 1246 (11th Cir. 2007) (holding that a petitioner was entitled to AEDPA equitable tolling where he "relied on the misleading instructions" of and was "affirmatively misled" by a state habeas court when the court instructed the petitioner to file his appeal with the wrong court); *Jackson v. Astrue*, 506 F.3d 1349, 1357 (11th Cir. 2007) (noting that the Eleventh Circuit, in habeas and other contexts, had applied equitable tolling "where there [was] no evidence of deliberate

concealment, but where the claimant nevertheless ha[d] been misinformed by a court's misleading actions or instructions").

The sum of the matter is that the district court found that Pliler was affirmatively misled when he was informed that the dismissal which would make it impossible to litigate his exhausted claims was "without prejudice," and we have no basis for upsetting that finding.

## III.

Neither our opinion in *Brambles v. Duncan*, 412 F.3d 1066 (9th Cir. 2005), nor any other opinion of this court, forecloses this conclusion.

The majority reads *Brambles* to hold that an advisement using the term "dismissal without prejudice" cannot as a matter of law be misleading, even when given after the limitation period has expired. *See* Maj. Op. at 16823-24. Rather, to warrant equitable tolling, "[a] petitioner like Ford must show that the court erred in the instruction it did give him." *Id.* at 16825. On balance—although the question is not free from doubt—I would not adopt this interpretation of *Brambles*.

Given the terseness of the opinion, it is unlikely that *Brambles* determined that a "dismissal without prejudice" advisement can *never* be misleading, even if the limitations period has run, and even if, as here, the judge who gave the advisement concludes that the petitioner *was* affirmatively and reasonably misled.[1] Although *Brambles* mentions that the "dismissal without prejudice" phrase was used in the advisement given Brambles, the opinion does not isolate that language or discuss whether those specific words are or are not misleading. *See* 412 F.3d at 1070. Instead, *Brambles* says

---

[1]The district court in *Brambles* had determined that Brambles was *not* entitled to equitable tolling. 412 F.3d at 1069.

only that the alternatives given to Brambles, as a whole, "were not affirmatively misleading." *Id.*

A panel of this court may consider the merits of an issue that was not " 'squarely addressed' " by an earlier case. *See Morales-Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir. 2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). As the specific question whether "dismissal without prejudice" can ever be misleading was not discussed in *Brambles*, I would hold that *Brambles* does not control this case.

Aside from *Brambles*, the majority relies on *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006), and *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009), for its conclusion that the extraordinary circumstances "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone." Maj. Op. at 16824. When these cases are read in context, they are not particularly relevant.

In *Rasberry*, we held that "a pro se petitioner's lack of legal sophistication is not, *by itself*, an extraordinary circumstance warranting equitable tolling." 448 F.3d at 1154 (emphasis added). *Rasberry* considered whether a petitioner's "inability correctly to calculate the [AEDPA] limitations period" and whether a district court's failure to notify a petitioner that he could amend his habeas petition to include exhausted claims "if it is apparent from the record that the petitioner meant to include the claims," regardless of "whether the habeas petition itself demonstrates [that] intent," are extraordinary circumstances. *Id.* at 1153-54. It did not consider whether specific options affirmatively given by a district court could be misleading, such that a petitioner's resulting confusion was an extraordinary circumstance.

*Waldron-Ramsey* is even further from the mark. In that case, decided after *Rasberry* and *Brambles*, we held that the petitioner "was not diligent in the filing of his federal habeas petition," and so reserved the question "whether confusion

about AEDPA law or confusion about what action the state court has taken can ever be the type of extraordinary circumstance that may warrant equitable tolling." *Waldron-Ramsey*, 556 F.3d at 1013.

## CONCLUSION

In sum, Ford was affirmatively misled by the language that the court chose to use in describing his options. In its considered judgment, the district court so found on remand, and the Supreme Court in *Pliler* did not erect a barrier to this finding. Indeed, the Supreme Court remanded for this very purpose. I would not read *Brambles* as dictating a contrary result in this case.

Alternatively, if *Brambles* does have the force the majority thinks it does, I would conclude that it was wrongly decided and would recommend *en banc* reversal by this court. The panel in *Brambles* should not have adopted a per se rule that telling a *pro se* litigant his dismissal is "without prejudice" can never be misleading. Ford's case offers a compelling example of why this is so. It was logical for Ford to be confused as to the meaning of a dismissal without prejudice, given the common understanding of the term "without prejudice." *See, e.g.*, THE COMPACT OXFORD ENGLISH DICTIONARY: NEW EDITION 356 (reprinted 1999) (2d ed. 1991) (defining "without prejudice" as "without detriment to any existing right or claim"); *see also id.* (defining the verb "prejudice" as "[t]o affect injuriously or unfavourably by doing some act, or as a consequence of something done; to injure or impair the validity of (a right, claim, statement, etc.)"). There is also evidence that Ford was *in fact* confused about the meaning of "without prejudice," which the district court reinforced with its instructions.[2] Finally, the Magistrate Judge *found* that Ford

---

[2] For example, in response to the government's attempt to dismiss Ford's Weed petition, Ford filed a traverse stating that "petitioner hopes to proceed by this instant Traverse as to those 'Grounds' which are action-

was affirmatively misled by the court's instructions given the specific context in which they were given. This court should not simply close its eyes to this finding, or the fact that a petitioner was actually and understandably misled, to follow a per se, formalistic rule.

For the foregoing reasons, I respectfully dissent.

---

able unless a stay or dismissal without prejudice is granted *or if in doing so he would be procedurally barred*." (emphasis added) He then filed a "return" to the government's answer, stating that if the district court could not stay his Weed petition, he requested dismissal without prejudice in order to exhaust his unexhausted claims in state court "*unless*, in doing so, he will be procedurally barred . . . In which case he has no choice but to proceed . . . ." The court then gave Ford three options, including dismissal "without prejudice" as the default. When Ford did not respond to the court's order regarding the Weed petition, the court dismissed it "without prejudice."